[No. G026285. Fourth Dist., Div. Three. Jan. 28, 2002.]

DCH HEALTH SERVICES CORPORATION et al., Plaintiffs and Respondents, v.
VERNER S. WAITE et al., Defendants and Appellants.

830

**COUNSEL**

Blumberg Law Corporation, John P. Blumberg and Ave Buchwald for Defendants and Appellants.

Manatt Phelps & Phillips and Donald R. Brown for Plaintiffs and Respondents DCH Health Services Corporation, Downey Community Hospital Foundation, Allen R. Korneff, and Edward J. Susank.

Sheppard, Mullin, Richter & Hampton and Robert L. Layton for Plaintiff and Respondent Sheldon S. Zinberg.

Salz & Salz and Brian Alan Baker for Plaintiff and Respondent Carl Westerhoff.

Law Offices of Neil F. Kligman and Neil F. Kligman for Plaintiff and Respondent Abram Zinberg.

**OPINION**

**RYLAARSDAM, Acting P. J.**—Defendant Verner S. Waite and his lawyer Randy Kramer appeal from the trial court's order disqualifying Kramer from

representing or assisting defendant in the underlying actions. They contend plaintiffs Carl Westerhoff, Sheldon Zinberg, and Abram Zinberg lacked standing to bring the motion for disqualification. Further, they contend that, even had the motion been made by a proper party, the court abused its discretion in ordering Kramer's disqualification. We agree with both contentions and accordingly reverse the order.

## FACTS

The cases in which the court recused Kramer consist of three consolidated actions. The plaintiffs in these actions are DCH Health Services Corporation (the hospital), Downey Community Hospital Foundation (the foundation), Westerhoff, the Zinbergs, and several other parties not pertinent to this appeal. They sued Waite, an anonymous organization denominated "Concerned Citizens of Downey," and some 1,000 Does. The complaints in these actions are for defamation in connection with a very public dispute in the Downey community concerning the operations of the hospital and the foundation. We first encountered this litigation in *Rancho Publications v. Superior Court* (1999) 68 Cal.App.4th 1538 [81 Cal.Rptr.2d 274], a case involving a discovery dispute.

When the first of these actions was commenced in 1996, Los Angeles Superior Court Judge Ana Luna was a member of the foundation's board of directors and was engaged to marry Kramer. Almost two years later, Luna resigned from the board. Shortly thereafter, she and Kramer married and sometime later, Kramer was retained to represent Waite after Waite's counsel became ill.

Westerhoff, a former officer of the foundation, requested Kramer voluntarily withdraw as counsel for Waite because of his marital relationship with Luna. When Kramer refused to do so, Westerhoff moved to disqualify him. The Zinbergs joined in the motion.

The court granted the motion, stating, "The record establishes that Judge Luna received confidential information while serving on the hospital board. Despite Mr. Kramer's declaration stating that he has not received any confidential information regarding this lawsuit, the Court believes that because of the unique nature of the marital relationship this Court should apply a prophylactic rule to avoid the appearance of impropriety."

## DISCUSSION

■ Code of Civil Procedure section 128, subdivision (a)(5) gives courts the power to order a lawyer's disqualification. (*Elliott v. McFarland Unified*

*School Dist.* (1985) 165 Cal.App.3d 562, 567 [211 Cal.Rptr. 802].) On appeal, a trial court's decision concerning a disqualification motion will not be disturbed absent an abuse of discretion. (*People ex rel. Dept. of Corporations v. SpeeDee Oil Change Systems, Inc.* (1999) 20 Cal.4th 1135, 1143 [86 Cal.Rptr.2d 816, 980 P.2d 371].) "The trial court's exercise of this discretion is limited by the applicable legal principles and is subject to reversal when there is no reasonable basis for the action. [Citations.]" (*In re Complex Asbestos Litigation* (1991) 232 Cal.App.3d 572, 585 [283 Cal.Rptr. 732].)

*Only a Party with an Expectation of Confidentiality Can Disqualify a Lawyer*

Luna never acted as a lawyer for the foundation; but the trial court assumed, and none of the parties dispute, that as a corporate director she owed the corporation a duty of confidentiality. The trial court's conclusion that Luna's relationship with Kramer created an appearance of impropriety must have been based on an assumed likelihood that Luna would breach her duty of confidentiality or that Kramer would prevail on her to do so. But to whatever extent Luna owed a duty of confidentiality to the foundation, she owed no such duty to the parties who sought Kramer's disqualification. Nor did Kramer.

Kramer and Waite assert Westerhoff and the Zinbergs do not have "any legally recognizable expectation of confidentiality" and thus lack standing to bring the motion to disqualify Kramer. They support this argument by citing *Colyer v. Smith* (C.D.Cal. 1999) 50 F.Supp.2d 966, which held that a nonclient litigant has no standing to bring a motion to disqualify the opposing lawyer. (*Id.* at p. 971.) This overstates the case. Standing arises from a breach of the duty of confidentiality owed to the complaining party, regardless of whether a lawyer-client relationship existed. Thus, for example, a lawyer may be disqualified after improper contacts with an opposing party's expert witness. (*County of Los Angeles v. Superior Court* (1990) 222 Cal.App.3d 647, 658 [271 Cal.Rptr. 698].)

Had the foundation brought the motion to disqualify Kramer, it would have had standing based on the duty of confidentiality Luna owed to it despite the absence of attorney-client relationship between Kramer and the foundation. As discussed below, this does not mean it would have prevailed. But a lawyer owes no general duty of confidentiality to nonclients. (*Maruman Integrated Circuits, Inc. v. Consortium* (1985) 166 Cal.App.3d 443, 448-449 [212 Cal.Rptr. 497]; *Cooke v. Superior Court* (1978) 83 Cal.App.3d 582, 592 [147 Cal.Rptr. 915].) Neither does a corporate director owe such a duty to anyone but the corporation.

The motion to disqualify Kramer was based solely on confidential information allegedly imparted to Luna while she served as a director of the foundation. None of the plaintiffs assert the existence of a current or former lawyer-client relationship with Kramer or a confidential relationship between themselves and Luna. Absent the existence of a lawyer-client relationship or other relationship imposing a duty of confidentiality, neither Westerhoff nor the Zinbergs were entitled to seek Kramer's disqualification. (See *Strasbourger Pearson Tulcin Wolff Inc. v. Wiz Technology, Inc.* (1999) 69 Cal.App.4th 1399, 1410, fn. 6 [82 Cal.Rptr.2d 326].)

*No Basis for Disqualification*

Though the court concluded Luna had received confidential information pertinent to the underlying action while she served on the foundation's board, it had no evidence, and did not make any factual determinations, that she disclosed such information to Kramer. The court did not find or suggest that Luna or Kramer had engaged in any impropriety. Instead, to support Kramer's disqualification, the court sought to "avoid the appearance of impropriety" arising from the "unique nature of the marital relationship." This is an inadequate basis for the order disqualifying Kramer.

As distinguished from judicial recusals, which may be required on the basis of a mere "appearance of impropriety" (Cal. Code Jud. Ethics, canon 2; see Code Civ. Proc., § 170.1, subd. (a)(6)(C)), such an appearance of impropriety by itself does not support a lawyer's disqualification. (*Gregori v. Bank of America* (1989) 207 Cal.App.3d 291, 305-308 [254 Cal.Rptr. 853].) " 'Speculative contentions of conflict of interest cannot justify disqualification of counsel.' [Citation.]" (*Smith, Smith & Kring v. Superior Court* (1997) 60 Cal.App.4th 573, 582 [70 Cal.Rptr.2d 507].) "A lawyer whose husband or wife is also a lawyer must, like every other lawyer, obey all disciplinary rules, for the disciplinary rules apply to all lawyers without distinction as to marital status. We cannot assume that a lawyer who is married to another lawyer necessarily will violate any particular disciplinary rule, such as those that protect a client's confidences, that proscribe neglect of a client's interest, and that forbid representation of differing interests." (ABA Com. on Prof. Ethics, opn. No. 340 (1975) p. 2.)

Currently, women constitute approximately 23 percent of the lawyers in California. (Jones, *And Miles to Go Before I Sleep: The Road to Gender Equity in the California Legal Profession* (1999) 34 U.S.F. L.Rev. 1.) Those numbers will inevitably rise, considering that almost 50 percent of today's law students are women. (See *ibid.*) As this trend increases, there undoubtedly will be more marriages between lawyers. Consequently, factual situations similar to the one before us will become more commonplace, giving

way to issues previously unanticipated in an era when the practice of law was dominated by men.

We concede that marriages between lawyers create a variety of novel issues concerning a lawyer's duty of confidentiality as well as whether lawyer-client conflicts arise. At the same time, we reject the suggestion that such issues should be resolved solely by reference to the marriage relationship. Is the likelihood of disclosure any less when two lawyers are sharing a household without being married or when they are involved in a dating relationship? Does the gender of the lawyers affect the analysis?

These issues should not be decided mechanically on the basis of the precise relationship between the lawyers. Rather, the court should start with the presumption that, unless proven otherwise, lawyers will behave in an ethical manner. Society has entrusted lawyers with confidences, and we should not assume that lawyers will violate these confidences when involved in particular relationships.

Neither the marital relationship between Luna and Kramer nor any "appearance of impropriety" is sufficient to deprive Waite of his right to be represented by a lawyer of his choice. The trial court abused its discretion in disqualifying Kramer based solely on what it considered to be an appearance of impropriety.

## DISPOSITION

The order is reversed and the matter is remanded. We direct the trial court to enter a new order consistent with the findings herein. The stay imposed on the underlying consolidated actions shall be lifted upon issuance of the remittitur. Appellants shall recover costs on appeal.

Bedsworth, J., and Moore, J., concurred.