[No. G032386. Fourth Dist., Div. Three. Feb. 3, 2004.]

YASSER ADDAM, Petitioner, v.
THE SUPERIOR COURT OF ORANGE COUNTY, Respondent;
MELANIE ADDAM, Real Party in Interest.

COUNSEL

Family Law Appellate Associates and Jeffrey W. Doeringer for Petitioner.

No appearance for Respondent.

Gene L. Takamine for Real Party in Interest.

OPINION

**RYLAARSDAM, J.**—We hold that a sibling relationship between a lawyer and the opposing party's physician is insufficient, standing alone, to preclude the lawyer from representing her client.

## FACTS

This marital dissolution action involves the usual disputes concerning custody and visitation. After a seven-year marriage, the parties entered into a marital settlement agreement and obtained a judgment of dissolution in 2001. In January 2003, husband, represented by his lawyer, Therese Ann Accetta, filed an order to show cause seeking to obtain custody of the couple's three children and other relief. The court ordered the parties to a mediation; the mediation failed to resolve all issues. After further proceedings, the parties signed a "stipulated order on order to show cause." (Capitalization omitted.) During all these proceedings, husband was represented by Ms. Accetta. A further hearing was scheduled for approximately a month later; the record furnished to us is not clear, but we assume this hearing was scheduled to permit the court to determine those issues raised in the January order to show cause that were still left unresolved. Husband states that, at the time of that hearing, wife asked for and the court granted a continuance to permit her to file a motion to recuse husband's lawyer. Thereafter wife filed such a motion.

The recusal motion was supported by wife's declaration stating that, beginning approximately 10 years before the divorce, she had been a patient of Dr. August D. Accetta, an obstetrician. She declares she "continued using him until 1996," followed by the statement, "I discontinued using him until on [sic] or about 2000 at which time he put an IUD in place for me and gave me a hormone medication." She relates that on an unspecified date, but presumably prior to the entry of the divorce decree, Dr. Accetta had called her after husband had asked him to intercede; at that time she discussed the marriage dissolution with him. Finally, wife states she contacted Dr. Accetta three times after the entry of the divorce decree.

The first time she called him about a medical problem, Dr. Accetta stated "that he was just back from a religious project and would treat [her] again

soon"; we interpret this ambiguous statement to mean that Dr. Accetta told wife he was not available to her. The second time she allegedly contacted Dr. Accetta, she sought to have him refill a prescription; the declaration is silent whether the prescription was refilled and whether she actually talked to Dr. Accetta. The last time wife called him was in February 2003; she was experiencing an acute problem and Dr. Accetta told her to go to an emergency room. He failed to return her further calls.

. A month or so later, wife received a letter from Dr. Accetta. He wrote that he had been a friend to both parties and that "[m]y sister, Adam's Attorney, is trying to settle the legal issues behind the child custody arrangement. I hope things will be resolved fairly. [¶] I hope you understand that until things are resolved, I should not be your physician." Finally wife's declaration states that she "believe[s]" that husband or his lawyer "continued to talk to Doctor Accetta regarding this matter."

Husband's opposition to the motion is supported by three declarations: his own, Dr. Accetta's, and Therese Accetta's. In his responsive declaration, husband states that wife ceased using Dr. Accetta before the birth of their third child, approximately five years before the divorce. He notes that Dr. Accetta has been his "personal friend . . . for well over ten years" and acknowledges that, after he and wife separated, he asked Dr. Accetta to intercede on his behalf, in an attempt to save the marriage, but that Dr. Accetta was unsuccessful.

Dr. Accetta states in his declaration that he has been husband's friend for 10 years. He denies sharing information subject to the physician-patient privilege with either his sister or husband. He avers that wife was his patient for the delivery of the parties' first two children, but not their third child, and that he had not seen her as a patient for years. He was surprised to hear from wife in February 2003 when she called with "an acute problem." He told her to go to the emergency room and had no further contact with her or her physician. After he received this call from wife, he became concerned that she might still consider him to be her physician and he therefore wrote the letter attached to wife's declaration.

The third declaration in opposition to the recusal motion is by Therese Accetta. A few weeks before she filed the order to show cause, husband retained her to represent him in connection with support and custody issues. She was told by husband that, until eight years before, her brother had been wife's physician. She confirmed with her brother that wife was not still his patient. She denied sharing any information with her brother that would be subject to attorney-client or physician-patient privileges. The remainder of this lengthy declaration consists largely of arguments and matters unrelated to the recusal motion.

The court granted the motion "based on an apparent conflict." It explained this ruling orally by stating, "the relationship between [wife] and her gynecologist [is so] intimate and personal . . .[,] not only physically, but discussing finances, emotion, etc., etc., I find that there is an appearance of a conflict."

Husband petitioned this court for a writ of mandate to compel the trial court to vacate the order recusing his lawyer and to order it to enter a new order denying the recusal motion. After requesting and receiving an informal response to the petition from wife, we stayed enforcement of the recusal order and issued an order to show cause why the writ of mandate should not issue.

In her answer to the petition, wife does not directly respond to the verified factual allegations of the petition as required by California Rules of Court, rule 56(f). However, because the petition itself contains a great deal of argument rather than factual allegations, we will nevertheless rule on the basis of the evidence presented to the trial court in support of and in opposition to the motion. In her points and authorities wife primarily argues the petition should be denied because husband suffered no "irreparable harm" as a result of the recusal of his lawyer. Her argument on the merits consists of less than a page and is devoid of any legal authorities or legal analysis.

## DISCUSSION

*An Appearance of Impropriety is Insufficient to Justify Recusing Husband's Lawyer*

It is not clear from the record whether the trial court concluded that Dr. Accetta continued to be wife's physician after the birth of the couple's second child. The record is silent on this issue and it is questionable, based on the above recited facts, that such a finding would be supported by substantial evidence. But we need not decide this issue because, even if a physician-patient relationship continued to exist, neither it, without more, nor any appearance of impropriety justifies the court's order.

It is also not clear from the record whether the trial court concluded that wife was unaware of the relationship between husband's lawyer and her physician or former physician until shortly before the time the motion was made or whether, as husband suggests, she knew all along. The record would support either conclusion, and the court made no findings relating to this issue. But, for reasons we explain below, a finding on this issue is not necessary to our decision.

This case is similar to *DCH Health Services Corp. v. Waite* (2002) 95 Cal.App.4th 829 [115 Cal.Rptr.2d 847]. There a lawyer's wife possessed

confidential information she had gained from her earlier affiliation with a party opposing lawyer's client, but there was no evidence any of this information had been disclosed to the lawyer. So here, Therese Accetta's brother presumably possesses confidential information relating to wife; but there is no evidence that he disclosed any such information to his sister. Wife's statements of her "belief" that there were improper communications between the Accetta siblings, unsupported by any facts, can hardly qualify as evidence that such communications took place. In an earlier case, we noted " '[s]peculative contentions of conflict of interest cannot justify disqualification of counsel.' [Citation.]" (*Smith, Smith & Kring v. Superior Court* (1997) 60 Cal.App.4th 573, 582 [70 Cal.Rptr.2d 507].)

In *DCH*, we quoted from an ABA Committee on Ethics and Professional Responsibility opinion stating " '[w]e cannot assume that a lawyer who is married to another lawyer necessarily will violate any particular disciplinary rule, such as those that protect a client's confidences, that proscribe neglect of a client's interest, and that forbid representation of differing interests.' " (*DCH Health Services Corp. v. Waite, supra,* 95 Cal.App.4th at p. 833.) We concluded that issues of conflict between lawyers "should not be decided mechanically on the basis of the precise relationship between the lawyers. Rather the court should start with the presumption that, unless proven otherwise, lawyers will behave in an ethical manner." (*Id.* at p. 834.) There is no reason why a similar presumption should not be applied to physicians. They are also bound to maintain their patients' confidences and, as with lawyers, we should assume they do so. Thus, absent evidence of communications invading either the physician-patient or the lawyer-client privileges, the mere sibling relationship between the Accettas is an insufficient basis for denying husband the important right to be represented by a lawyer of his choice.

The appearance of impropriety, upon which the trial court based its decision, provides an insufficient basis for the recusal. "Despite the many references to the appearances standard in our case law, and despite occasional judicial statements that '[d]isqualification is proper . . . to avoid any appearance of impropriety' [citation], there is no California case in which an attorney has been disqualified solely on this basis. Invariably, Canon 9 has been relied upon to disqualify counsel only where the appearance of impropriety arises in connection with a tangible dereliction." (*Gregori v. Bank of America* (1989) 207 Cal.App.3d 291, 306 [254 Cal.Rptr. 853], fn. & italics omitted.) And, citing *Gregori*, as we explained in *DCH*, "[a]s distinguished from judicial recusals, which may be required on the basis of a mere 'appearance of impropriety' (Cal.Code Jud. Ethics, canon 2; see Code Civ. Proc., § 170.1, subd. (a)(6)(C)), such an appearance of impropriety by itself does not support a lawyer's disqualification." (*DCH Health Services Corp. v. Waite, supra,* 95 Cal.App.4th at p. 833).

*Husband's Legal Remedy Was Not Adequate*

Wife's primary argument in opposition to the petition is that husband did not suffer "irreparable harm." She seems to base this claim on factual statements, mostly unsupported by any record reference, to the effect that issues of visitation during summer vacation have been resolved since the petition was filed, and "[t]he basketball and soccer seasons do not start till December." This argument reflects a serious misunderstanding of the concept of irreparable harm in the context of this case. The question is not whether there is enough time for husband to obtain another lawyer but whether he is entitled to retain the lawyer of his choice. Real party fails to provide reasoned argument and authorities on this issue. Lacking such, we consider the issue waived. (*Berger v. Godden* (1985) 163 Cal.App.3d 1113, 1119–1120 [210 Cal.Rptr. 109].)

*The Trial Court Shall Determine Husband's Entitlement to Attorney Fees*

Husband asks us to award him attorney fees under Family Code section 271. That section provides for awards of attorney fees as sanctions if the court finds that the other party or lawyer "frustrate[d] the policy of the law to promote settlement of litigation and, where possible, to reduce the cost of litigation by encouraging cooperation between the parties and attorneys." (Fam. Code, § 271, subd. (a).) We will defer to the trial court to decide whether such an award is appropriate. If so, it shall determine the amount of fees to be awarded to husband as sanctions.

Husband also asks for attorney fees under Family Code sections 2030 through 2032. These sections provide for awards of attorney fees based on the financial needs and abilities of the parties. Again, we lack the necessary evidence to enable us to determine whether husband should recover under these sections. The trial court shall likewise decide whether a finding that wife's ability to pay and husband's needs justify an award of attorney fees for his prosecuting this writ proceeding. If so, the trial court shall determine the amount of fees to be awarded to husband.

Wife also asks that we award her attorney fees. In view of both our disposition and the inadequacies of her answer to the petition we noted earlier, her request is denied.

## DISPOSITION

The petition is granted. Let a writ of mandate issue directing the trial court to vacate its order recusing Therese Anne Accetta as petitioner's lawyer and to issue a new order denying real party's motion to recuse her. The trial court

shall decide whether petitioner is entitled to attorney fees under either Family Code section 271 or sections 2030 through 2032, or both and, if so, determine the amount of such fees to be paid by real party to petitioner. Real party's request for attorney fees is denied. Petitioner shall recover his costs incurred in this proceeding.

Sills, P. J., and Fybel, J., concurred.