Filed 2/27/15  United Farm Workers of America v. La Union Es Para Todoa Staff Union CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| UNITED FARM WORKERS OF AMERICA,<br><br>        Plaintiff and Appellant,<br><br>v.<br><br>LA UNION ES PARA TODOS STAFF UNION et al.,<br><br>        Defendants and Respondents. | H039997<br>(Monterey County<br> Super. Ct. No. M123292) |

In this appeal we explore the axiom that "a lawyer owes no general duty of confidentiality to nonclients."  (*DCH Health Services Corp. v. Waite* (2002) 95 Cal.App.4th 829, 832 (*DCH*).)  Plaintiff United Farm Workers of America challenges the denial of its motion to disqualify the law firm L+G, LLP and its attorneys (collectively, L+G) from representing defendants La Union Es Para Todos Staff Union, Francisco Cerritos, Armando Lopez, Doroteo Lopez and Jose Aguilar in plaintiff's breach of contract action to enforce its collective bargaining agreement with defendants.  Plaintiff argues that the trial court erred in denying the motion because L+G has conflicts of interest arising out of concurrent representation of clients with conflicting interests or, alternatively, successive representation of clients with conflicting interests.  For the reasons stated here, we find no abuse of discretion and will affirm for lack of any confidential relationship between plaintiff and L+G.

## I.  TRIAL COURT PROCEEDINGS

Plaintiff is an unincorporated labor organization which represents agricultural employees in California and other states.  Some of plaintiff's nonsupervisory employees formed defendant La Union Es Para Todos Staff Union (La Union) in 2013 and, after mediation, the parties entered into a collective bargaining agreement on May 1, 2013, which plaintiff formally recognized by letter dated May 20, 2013.  On May 16, 2013, plaintiff terminated defendant Francisco Cerritos's employment.  Cerritos is an officer of La Union and, before his termination, was allegedly responsible for administering plaintiff's collective bargaining agreement with strawberry grower Dole Berry North in Monterey County.  That day, defendants allegedly "openly picketed, entered onto [plaintiff's] office structures, and demanded reinstatement of ... Cerritos."

Plaintiff filed a complaint alleging breach of contract against La Union, Cerritos, two individuals employed under plaintiff's union contract with Dole Berry North, and Armando Lopez, who worked for plaintiff and was an officer of La Union.  Plaintiff complained that defendants' picketing violated the "No Strike Clause" of the collective bargaining agreement between plaintiff and La Union and sought an injunction to enforce that clause.

Plaintiff moved to disqualify L+G from representing defendants, arguing that L+G "has established an attorney-client relationship with current and former ... employees" of plaintiff, which would give L+G access to "a wealth of privileged and highly confidential information" about plaintiff's internal operations and procedures, including information about plaintiff's union organizing campaigns directed toward existing and potential clients of L+G.  Plaintiff argued disqualification was required due to the alleged conflict of interests between La Union and L+G's other clients.  The trial court denied plaintiff's motion.

2

## II.    DISCUSSION

### A.  STANDARD OF REVIEW

Authority to disqualify attorneys is found in Code of Civil Procedure section 128, subdivision (a)(5), which grants a trial court the power to "control in furtherance of justice, the conduct of its ministerial officers, and of all other persons in any manner connected with a judicial proceeding before it, in every matter pertaining thereto." (Code Civ. Proc., § 128, subd. (a)(5); *Dino v. Pelayo* (2006) 145 Cal.App.4th 347, 351 (*Dino*).) "An order denying a disqualification motion is appealable either as an order refusing to grant an injunction to restrain counsel from participating in the case (Code Civ. Proc., § 904.1, subd. (a)(6)) or as a final order on a collateral matter (*Meehan v. Hopps* (1955) 45 Cal.2d 213, 215-217)." (*Roush v. Seagate Technology, LLC* (2007) 150 Cal.App.4th 210, 218.) We review a trial court's denial of a motion to disqualify an attorney for abuse of discretion and will not "substitute [our] factual findings for the trial court's express or implied findings so long as they are supported by substantial evidence." (*Dino*, at p. 351.) Plaintiff urges that a de novo standard of review applies when there are no disputed material facts, (citing *Banning Ranch Conservancy v. Superior Court* (2011) 193 Cal.App.4th 903, 910-911), but because material facts are in dispute here, including for example the relationship between plaintiff, La Union, and L+G, we review for an abuse of discretion.

### B.  RELATIONSHIP BETWEEN PLAINTIFF AND L+G

Defendants argue that plaintiff does not have "standing" to seek L+G's disqualification because plaintiff lacks "a legally cognizable interest to disqualify opposing counsel." Plaintiff counters that defendants cite "no case law whatsoever" to support their challenge to plaintiff's standing. Plaintiff overlooks *Great Lakes Construction, Inc. v. Burman* (2010) 186 Cal.App.4th 1347 (*Great Lakes*), which notes that "a 'standing' requirement is implicit in disqualification motions." (*Great Lakes*, at p. 1356.)

3

Though the parties and certain published opinions (including *Great Lakes, supra,* 186 Cal.App.4th at p. 1356) discuss a non-client's ability to disqualify an attorney as a matter of "standing," the characterization is technically incorrect because "standing refers to an aggrieved party's right to bring an action in the first instance, rather than an existing party's right to bring a motion seeking some sort of relief from the trial court." (*Dino, supra,* 145 Cal.App.4th at p. 353, fn. 2.)  Like the *Dino* court, we need not decide whether the issue is properly framed as one of standing. (*Id.* at p. 353.)  We review the record to determine whether plaintiff had a sufficient relationship with L+G to prevail on a motion to disqualify the firm.

"Generally, before the disqualification of an attorney is proper, the complaining party must have or have had an attorney-client relationship with that attorney." (*Dino, supra,* 145 Cal.App.4th at p. 352.)  Even without an explicit attorney-client relationship, a party may successfully move to disqualify an attorney if "some sort of confidential or fiduciary relationship" exists between the attorney and the party moving for disqualification, the existence of which is a question of fact.  (*Id.* at p. 353.)  And "where [an] ethical breach is 'manifest and glaring' and so 'infects the litigation in which disqualification is sought that it impacts the moving party's interest in a just and lawful determination of [his or] her claims' [citation], a non-client might [be authorized] to bring a motion to disqualify based upon a third-party conflict of interest or other ethical violation." (*Great Lakes, supra,* 186 Cal.App.4th at p. 1357.)  To assert a third party claim, "the non-client must meet stringent ... requirements, that is, harm arising from a legally cognizable interest which is concrete and particularized, not hypothetical." (*Id.* at p. 1358.)

### 1.  Plaintiff and L+G Have No Direct Confidential Relationship

Plaintiff does not claim an attorney-client relationship exists directly between plaintiff and L+G or that it has a confidential or fiduciary relationship with L+G.  To the

4

contrary, the thrust of plaintiff's argument is that L+G consistently represents "clients with interests directly adverse to" plaintiff.[1]

An argument similar to plaintiff's was rejected in *DCH, supra,* 95 Cal.App.4th 829. There, DCH Health Services Corporation, Downey Community Hospital Foundation, Carl Westerhoff, and several other plaintiffs sued Verner Waite for defamation. When the complaint was filed, Los Angeles Superior Court Judge Ana Luna was a member of the board of directors of the hospital foundation and was also engaged to marry attorney Randy Kramer. Luna resigned from the board and married Kramer, who was later retained by Waite to defend him in the defamation case. The trial court granted Westerhoff's motion to disqualify Kramer because of his relationship with Luna. (*Id.* at p. 831.) The appellate court reversed, finding that "[n]one of the plaintiffs assert the existence of a current or former lawyer-client relationship with Kramer or a confidential relationship between themselves and Luna. Absent the existence of a lawyer-client relationship or other relationship imposing a duty of confidentiality, neither Westerhoff nor the [other plaintiffs] were entitled to seek Kramer's disqualification." (*Id.* at p. 833.)

Like the plaintiffs in *DCH*, plaintiff here does not assert the existence of a current or former attorney-client or confidential relationship with L+G. Plaintiff also makes no

---

[1] Plaintiff requests that we take judicial notice of an amicus curiae brief filed by the Western Growers Association and other groups related to an appeal in the Fifth Appellate District in which plaintiff is a real party in interest, arguing that it is relevant to show that the Western Growers Association, for whom L+G has worked, represents interests adverse to the UFW. However, there is no indication L+G had any involvement with drafting the amicus brief, making it irrelevant to this case. Even if the brief had some relevance, because we find that plaintiff has no confidential relationship with L+G giving rise to professional duties of loyalty or confidentiality, that L+G represents clients with interests adverse to plaintiff is irrelevant. Because the judicial notice subject matter is irrelevant, we deny plaintiff's request. (*Hughes Electronics Corp. v. Citibank Delaware* (2004) 120 Cal.App.4th 251, 266, fn. 13 ["As a general matter, judicial notice is not taken of matters irrelevant to the dispositive points on appeal."].)

showing of a " 'manifest and glaring' " ethical breach or a concrete and particularized injury it suffers as a result of L+G's representation of defendants. (*Great Lakes, supra,* 186 Cal.App.4th at p. 1357, quoting *Colyer v. Smith* (1999) 50 F.Supp.2d 966, 972.)

### 2. Plaintiff and La Union Are Not One Entity for Conflict Purposes

Though plaintiff and L+G have no attorney-client, confidential, or fiduciary relationship, plaintiff could theoretically invoke La Union's relationship with L+G to support a disqualification motion upon a showing that plaintiff and La Union should be treated as one entity under California conflict of interest rules. Plaintiff cites *Morrison Knudsen Corp. v. Hancock, Rothert & Bunshoft* (1999) 69 Cal.App.4th 223 *(Morrison)*, which involved the ability of a subsidiary corporation to assert the conflicts of its parent corporation. (*Id.* at p. 240.)

In *Morrison*, a subsidiary corporation contracted with a water district for engineering services to relocate a road for a dam project. (*Morrison, supra,* 69 Cal.App.4th at p. 227.) The law firm Hancock, Rothert & Bunshoft (Hancock) served as attorneys for the subsidiary's parent corporation and were later retained by the water district to investigate the subsidiary's work on the road relocation project. (*Id.* at pp. 227-228.) On appeal from the trial court's order disqualifying Hancock, the appellate court discussed "the circumstances in which parent and subsidiary corporations may be treated as one entity under California conflict of interest rules." (*Id.* at p. 240.) Quoting a formal opinion of the California State Bar Standing Committee on Professional Responsibility and Conduct, the court stated that a parent and subsidiary should be treated as one if: (1) " 'a corporation is the alter ego of another entity or has sufficient unity of interests,' " or (2) " 'the attorney has obtained confidential information directly from the nonclient subsidiary under circumstances where the subsidiary could reasonably expect that the attorney had a duty to keep such information confidential ... .' " (*Morrison*, at p. 241, quoting California State Bar Standing Committee on Professional Responsibility and Conduct Formal Opinion No. 1989-113.)

To determine whether a sufficient unity of interests exists, attorneys must " 'evaluate the separateness of the entities involved, whether corporate formalities are observed, the extent to which each entity has distinct and independent managements and board[s] of directors, and whether, for legal purposes, one entity could be considered the alter ego of the other.' [Citation.]" (*Morrison, supra,* 69 Cal.App.4th at p. 241.) Applying that test to the parties before it, the *Morrison* court noted Hancock received confidential information during the course of its work for the parent corporation substantially related to the water district's claim against the subsidiary corporation. (*Morrison,* at p. 245.) Additionally, the parent corporation "control[led] the legal affairs of the subsidiary," the parent's personnel administered the subsidiary's contract with the water district, and the water district was aware of the parent corporation's involvement. (*Id.* at p. 246.) Based on that evidence, the court affirmed the trial court's finding that the parent and subsidiary had a unity of interests such that they should be treated as one entity for conflict of interest purposes. (*Id.* at pp. 247-248.)

In contrast to the parent and subsidiary in *Morrison*, plaintiff and La Union have no unity of interests for purposes of plaintiff's breach of contract action against defendants. Plaintiff states that plaintiff and La Union "are labor unions and both have a direct interest in increasing union membership for agricultural employees." While plaintiff and La Union might generally share an interest in increasing union membership, their interests for purposes of plaintiff's lawsuit are manifestly adverse. Applying the unity of interests test, no factor supports treating them as one entity. For example, based on the complaint it appears plaintiff and La Union have distinct and independent boards of directors given that La Union consists of *non-supervisory* employees of the plaintiff. Additionally, plaintiff presented no evidence that L+G obtained *any* confidential information directly from plaintiff. (See *Morrison, supra,* 69 Cal.App.4th at p. 241 [suggesting parent and subsidiary should be treated as one entity where attorney obtains confidential information directly from non-client under circumstances where non-client

7

could reasonably suspect attorney had duty to keep information confidential].) Even assuming that conflict of interest principles applicable to corporations would also apply to non-corporate entities, no evidence supports treating plaintiff and La Union as one entity for conflict of interest purposes.

## C. DISCLOSURE OF INFORMATION BY CURRENT AND FORMER EMPLOYEES

Plaintiff argues that "L+G's representation of current and former UFW employee organizers exposes the firm to a wealth of information regarding [plaintiff's] internal processes and procedures." Though never expressly stated, plaintiff's concern appears to be that L+G will use this information in its representation of clients (i.e., agricultural employers) in matters adverse to plaintiff.

*Neal v. Health Net, Inc.* (2002) 100 Cal.App.4th 831 (*Neal*), addressed concerns of an employer about disclosure of confidential information by a former employee. Plaintiff Khybrette Neal retained attorney Michael S. Traylor and sued her former employer, Health Net, Inc., for wrongful discharge based on gender and racial discrimination. A legal secretary for Health Net named Cynthia Brockett was terminated for accessing Health Net's confidential attorney-client information related to Neal's case. Brockett then retained Traylor to file her own discrimination lawsuit against Health Net, leading Health Net to move to disqualify Traylor from Neal's case. (*Id.* at p. 834.) The court of appeal reversed the trial court's order disqualifying Traylor. (*Id.* at p. 850.)

In reversing the trial court, the *Neal* court distinguished the facts of that case from ethical rules regarding successive representation of adverse parties in the same case by an attorney. (*Neal, supra,* 100 Cal.App.4th at pp. 840-841.) Unlike cases with successive representation of adverse parties by an attorney, where a "presumption of possession of confidential information" applies and disqualification is automatic, the court found the present case "entirely different" because Brockett was not an attorney or even affiliated with Traylor as a legal secretary. (*Id.* at p. 841.) Instead, the court found Brockett was merely "a *client*" of Traylor and noted that the "Supreme Court has never held that the

8

presumption of possession of confidential information and the *automatic* disqualification rule applies when a nonlawyer client who may have access to privileged matters retains an attorney." (*Ibid.*, original italics.) Thus, automatic disqualification was unwarranted.

Turning to whether disqualification was nonetheless appropriate, even if not mandatory, the *Neal* court noted that cases "discuss[ing] the issue of whether an attorney should be disqualified after being exposed to an adverse party's confidential information ... have consistently concluded that mere exposure to confidential information of the opposing party does not require disqualification." (*Neal, supra,* 100 Cal.App.4th at p. 841.) The court then discussed several ways in which Traylor's disqualification was an abuse of discretion. Health Net presented no evidence that any information related to Neal's case was actually disclosed to Traylor by Brockett. Even if Brockett had disclosed confidential information to Traylor, the court found "no applicable legal standard that supports disqualification ... as a sanction" for that disclosure. (*Id.* at p. 843.) In that same vein, the court reasoned that disclosing confidential information to one's own counsel in one's own lawsuit is not improper. "[B]arring discussions of an adversary's confidences known to the client ... would defeat the purpose of confidentiality, which is to promote full and open discussions between attorney and client." (*Id.* at pp. 843-844.) Importantly, the court pointed out that "disqualification is also an ineffective remedy because it would not prevent the party from giving new counsel the information, which would leave the adversary in the same position as before." (*Id.* at p. 844.) Finally, the court explained that "in cases such as the one at bench, where an adversarial relationship develops, the rights of the employer to avoid unwarranted public disclosure of its confidences must be balanced against the employee's right to maintain his or her lawsuit." (*Ibid.*) Rather than the "drastic" measure of disqualification, an employer can protect its confidences from unwarranted disclosure by "measures such as: protective orders, limiting the admission of evidence; in camera proceedings; the use of sealed records; payment of attorney fees and costs; and

9

disciplinary sanctions through the State Bar of California in appropriate circumstances." (*Ibid.*)

Applying the legal principles summarized in *Neal* here, plaintiff does not allege any of the defendants are or were formerly attorneys representing plaintiff. Instead, like Ms. Brockett in *Neal*, defendants are merely clients of L+G. Given the adverse posture between plaintiff and defendants in the present lawsuit, and in light of defendants' apparent satisfaction with representation by L+G, the trial court did not abuse its discretion by denying plaintiff's motion.

### III.    DISPOSITION

The order denying plaintiff's motion to disqualify L+G is affirmed.

_____

Grover, J.

**WE CONCUR:**


_____

Bamattre-Manoukian, Acting P.J.


_____

Márquez, J.