Filed 6/28/16  Engel v. Jenny Lind Fire Protection Dist. CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Calaveras)

----

| | |
|---|---|
| ALBERT ENGEL, JR., | C078418 |
| Plaintiff and Appellant, | (Super. Ct. No. 12CV38403) |
| v. | |
| JENNY LIND FIRE PROTECTION DISTRICT et al., | |
| Defendants and Respondents. | |

Plaintiff Albert Engel, Jr., appeals from the denial of his motion to disqualify counsel for defendants Jenny Lind Fire Protection District and Fire Chief Kim Olson.  An order denying a pretrial motion to disqualify opposing counsel is directly appealable. (*Reed v. Superior Court* (2001) 92 Cal.App.4th 448, 452-453.)  Engel contends disqualification is the only remedy for counsel's "egregious misconduct."  He asserts that misconduct includes intentionally withholding evidence, knowingly presenting false facts and deliberate misrepresentations to judicial officers, violating discovery orders, failing

1

to correct the client's false testimony, intimidating a key witness, and improperly coordinating testimony of witnesses. He contends counsel's misconduct poses a genuine likelihood of depriving him of a fair trial and the only remedy is disqualification.

We affirm. Engel has failed to show misconduct that is likely to deprive him of a fair trial. In many instances, he fails to establish that defendants committed misconduct at all. The misconduct he does establish is primarily discovery violations, for which a range of sanctions is available, not including disqualification of counsel.

## BACKGROUND

Engel's last day of work at defendant Jenny Lind Fire Protection District (JLFPD) was November 5, 2010. Three days later he filed a workers' compensation claim alleging a "stress/psych injury." In April 2011, he applied for unemployment benefits, claiming the reason for his separation was that he was working in a hostile environment and his reporting led to his termination. On May 31, 2011, JLFPD notified Engel that he was released non-punitively from service as a fire lieutenant for failure to provide sufficient information that he was qualified to perform the essential functions of the job.

In April 2012, Engel brought suit against JLFPD and Olson for wrongful termination and employment discrimination.[1] A series of discovery disputes followed.

*Subpoenas and Motions to Quash*

Engel served a subpoena on Crabtree Consulting Services, LLC (Crabtree Consulting) for business records. Defendant JLFPD had retained Crabtree Consulting as a consultant on human resource matters. Defendants' motion to quash was granted; the trial court found the subpoena overbroad.

Engel served a second subpoena on Crabtree Consulting and defendants moved to quash it on the basis that it sought documents relating to third parties that were excluded

---

[1] The record on appeal does not contain the original or any amended complaint.

from discovery by a court order. The trial court directed defendants to serve a comprehensive separate statement identifying the specific factual and legal basis of the objection. The motion to quash was subsequently denied and defendants were sanctioned $3,500.

*Defendants' Motion to Compel*

Defendants moved to compel further discovery responses. Most of the issues were resolved at meet and confer discussions except a discovery request aimed at determining the reasonableness of plaintiff's attorney fees to date (purportedly to assess defendants' exposure). The trial court denied the motion to compel and awarded Engel $3,950 in sanctions.

*Referral to Referee*

In August 2013, Engel filed another motion to compel production of Crabtree Consulting documents, contending that defendants had waived their right to assert attorney-client privilege. The trial court referred this discovery dispute to a referee. In addition to asserting waiver, Engel claimed the withheld records contained evidence of witness tampering and conspiracy to commit perjury. The referee referred to these claims as the crime/fraud exception to attorney-client privilege.

The referee addressed the issue of repeated late discovery. Engel complained that "[t]hings have trickled in." In response, defense counsel Vladimir Kozina explained that JLFPD was a small fire district with poor record keeping. "[E]very time we get something that we think is responsive or didn't have before, didn't see before, we've been trying to turn it over to plaintiff's counsel." Kozina claimed all discovery responses were in good faith, and questioned why he would jeopardize his reputation and career to withhold documents.

The referee found a waiver of the attorney-client privilege. He found Engel had not sustained his burden on the serious charge that defense counsel aided the commission of fraud or a crime. He found Engel's assertions of the fraud/crime exception "are long

3

on detail but lack perspective" and that "little purpose was served by asserting the crime/fraud exception. By doing so, plaintiff appears to be the responsible party in requiring that this dispute be referred to the Referee." The referee found defendants were not blameless. The document production was "poorly done," there was "[n]o credible explanation" for the failure to make a timely production, and defendants made "a poorly conceived objection." This conduct caused "understandable mistrust on the part of plaintiff and his counsel." The referee declined to award sanctions, and recommended that each party bear its own costs. The referee recognized that this recommendation would impose a greater burden on Engel, "which is appropriate given that the extensive costs are largely the result of plaintiff's counsel['s] ill-conceived crime/fraud assertions." During oral argument, Engel had requested additional relief, both reopening certain depositions and a forensic examination of the hard drives of defendant Kim Olson, as well as those of Elizabeth Hughes[2] and Crabtree Consulting. The referee recommended only the former. The referee further recommended that defense counsel be ordered to conduct their own review to determine if all requested records have been produced and file a declaration under penalty of perjury that they had done so.

The trial court adopted the referee's proposed order.

---

[2] Elizabeth Hughes was the administrative assistant for JLFPD from July 2000 until December 2012. Hughes was placed on administrative leave on October 15, 2012; she was under investigation for embezzlement.

4

In June 2014, defense counsel Kozina filed a declaration that he had reviewed all steps taken by defendants and Crabtree Consulting regarding the production of documents and believed "all reasonable steps have been taken to ensure all relevant requested records have been produced."

*Elizabeth Hughes's Deposition*

Another discovery issue concerned Hughes's deposition. The first deposition session lasted only 20 minutes. According to Hughes, defense counsel William Gorham shouted, "slammed his fists on the table," "lunged aggressively" while "making wild hand gestures" before storming out. Engel then brought a motion to compel the deposition, which defendants opposed on the basis that Hughes's testimony might violate the attorney-client privilege. Defendant claimed Hughes "had many privileged attorney-client conversations" with defense counsel and had been present at closed sessions of the Board of Directors of JLFPD. Defense counsel was told their "main contact" at JLFPD for the litigation was Hughes. Hughes was deposed and testified that she was not aware of any reason she could not give her best testimony.

Subsequently, in opposition to defendant Olson's motion for summary judgment, Hughes provided a declaration that conflicted in parts with her deposition testimony. Hughes claimed she offered the declaration "in lieu of subpoenaed testimony" "because I am fearful for my personal safety and security" in the presence of defense counsel Gorham due to his "verbally and physically aggressive conduct" at the first deposition. During that deposition, Gorham "suddenly began threatening me with peril." At the second deposition, Gorham sat next to her "once again placing me in fear that if I answered the question wrong that he would become physically violent towards me." She was nervous and fearful and the undue stress caused her great difficulty in remembering details. She continued to be in fear if in the same room as Gorham.

5

*Engel's Fitness for Duty*

A key issue in the case was whether Engel had provided a sufficient fitness for duty evaluation to permit him to return to work after his workers' compensation claim. Engel's position was that he had been properly released to return to work by Dr. Ben Watson, the doctor authorized to treat him. Defendant's position was that Engel was required to see a psychiatrist, Dr. Alberto Lopez, and Engel had refused to do so.

In moving for summary judgment, Olson repeatedly claimed that Dr. Watson was Engel's own doctor who had referred Engel to a mental health professional. In his deposition, Lawrence Crabtree of Crabtree Consulting testified he believed Dr. Watson was Engel's personal physician. Crabtree also testified he reviewed the deposition of Tim Yeung.[3]

*Engel's Motion to Disqualify Defense Counsel*

In August 2014, Engel filed a motion to disqualify defendants' counsel, the law firm Mayall Hurley P.C. and attorneys Gorham and Kozina. Engel argued that defense counsel had demonstrated deceit before every judicial officer in the case. Counsel had misrepresented that (1) Hughes participated in discovery; (2) Hughes attended closed sessions of the JLFPD's board of directors; and (3) defense counsel was not involved in withholding documents from production. Defense counsel had Olson and Crabtree sign false verifications about discovery, when their depositions revealed they did not know what had been produced. Further, defense counsel continued to proffer false facts, such as that Dr. Watson was Engel's personal physician and that Engel failed to submit a medical evaluation by a doctor of JLFPD's choosing. Engel also contended that defense

---

[3] Defendants retained Yeung "to assist in determining what rights Mr. Engel would have to due process." In his deposition, Yeung testified that it was inappropriate to request an additional fitness evaluation simply because the employer did not like the first one. If he had any inkling that Olson requested an additional evaluation because he did not like the first one, "I would have advised Chief [Olson] that you really shouldn't be doing that."

counsel's intimidation of witness Hughes and tainting of witness Crabtree rose to the level of criminal misconduct.

The trial court denied the motion for disqualification. It noted that Engel failed to cite to a case where a disqualification motion was granted under similar circumstances. The court was "unable to conclude that defense counsel tactics threaten plaintiff with a cognizable injury that would justify attorney disqualification." The court found allowing Crabtree to review Yeung's deposition "may have been unorthodox," but it was not a violation of the Evidence Code, and even if it had been, it did not compel disqualification.

Engel appealed. This court granted his motion for calendar preference.

## DISCUSSION

### I

#### *Standard of Review*

"Generally, a trial court's decision on a disqualification motion is reviewed for abuse of discretion. [Citations.] If the trial court resolved disputed factual issues, the reviewing court should not substitute its judgment for the trial court's express or implied findings supported by substantial evidence. [Citations.] When substantial evidence supports the trial court's factual findings, the appellate court reviews the conclusions based on those findings for abuse of discretion. [Citation.]" (*People ex rel. Dept. of Corporations v. SpeeDee Oil Change Systems, Inc*. (1999) 20 Cal.4th 1135, 1143-1144 (*SpeeDee*).)

" 'In viewing the evidence, we look only to the evidence supporting the prevailing party. [Citation.] We discard evidence unfavorable to the prevailing party as not having sufficient verity to be accepted by the trier of fact. [Citation.] Where the trial court has drawn reasonable inferences from the evidence, we have no power to draw different inferences, even though different inferences may also be reasonable.' [Citation.]" (*Kennedy v. Eldridge* (2011) 201 Cal.App.4th 1197, 1203 (*Kennedy*).)

7

Engel contends there is no dispute as to "the deceptive scheme engaged in by Defense counsel." He contends counsel did not present, and cannot present, any evidence to refute the allegations of misconduct. He contends the only issue is a legal one, whether that undisputed misconduct warrants disqualification, and therefore the proper standard of review is de novo.

As explained in our discussion *post*, Engel's claims of misconduct are not undisputed. Accordingly, our review is for an abuse of discretion.

"A motion to disqualify a party's counsel may implicate several important interests. Consequently, judges must examine these motions carefully to ensure that literalism does not deny the parties substantial justice. [Citation.] Depending on the circumstances, a disqualification motion may involve such considerations as a client's right to chosen counsel, an attorney's interest in representing a client, the financial burden on a client to replace disqualified counsel, and the possibility that tactical abuse underlies the disqualification motion. [Citations.]" (*SpeeDee*, *supra,* 20 Cal.4th at pp. 1144-1145.) "Ultimately, disqualification motions involve a conflict between the clients' right to counsel of their choice and the need to maintain ethical standards of professional responsibility. [Citation.] The paramount concern must be to preserve public trust in the scrupulous administration of justice and the integrity of the bar. The important right to counsel of one's choice must yield to ethical considerations that affect the fundamental principles of our judicial process. [Citations.]" (*Id*. at p. 1145.)

"The importance of the policy concerns underlying a disqualification order mandates 'careful review of the trial court's exercise of discretion.' [Citation.]" (*Dino v. Pelayo* (2006) 145 Cal.App.4th 347, 351-352.)

8

## II

### *Disqualification Motion by Non-Client*

The trial court has authority to grant a motion to disqualify an attorney under its powers to control the proceeding before it pursuant to Code of Civil Procedure section 128, subdivision (a)(5). (*DCH Health Services Corp. v. Waite* (2002) 95 Cal.App.4th 829, 831 (*DCH*).)

"Generally, before the disqualification of an attorney is proper, the complaining party must have or must have had an attorney-client relationship with that attorney." (*Great Lakes Construction, Inc. v. Burman* (2010) 186 Cal.App.4th 1347, 1356 (*Great Lakes*).) California, however, permits a non-client to move for disqualification of opposing counsel under certain circumstances. "[W]hile federal courts generally limit standing to bring disqualification motions to clients or former clients [citation], in California 'where the ethical breach is " 'manifest and glaring' " and so "infects the litigation in which disqualification is sought that it impacts the moving party's interest in a just and lawful determination of [his or] her claims" [citation], a nonclient might meet the standing requirements to bring a motion to disqualify based upon a third party conflict of interest or other ethical violation.' [Citation]." (*Kennedy, supra,* 201 Cal.App.4th at p. 1204.) "Accordingly, we conclude that where an attorney's continued representation threatens an opposing litigant with cognizable injury or would undermine the integrity of the judicial process, the trial court may grant a motion for disqualification, regardless of whether a motion is brought by a present or former client of recused counsel." (*Id.* at p. 1205; see also *Chronmetrics, Inc. v. Sysgen, Inc.* (1980) 110 Cal.App.3d 597, 607.)

Disqualification may be appropriate where the ethical breach at issue is breach of the duty of loyalty due to a conflict of interest (see *Great Lakes, supra,* 186 Cal.App.4th at p. 1357) or breach of the duty to protect confidentiality of communications (see *SpeeDee, supra,* 20 Cal.4th at p. 1146; *Meza v. H. Muehlstein & Co., Inc.* (2009) 176 Cal.App.4th 969, 980).

In *Kennedy*, an attorney sought to represent his son, the father of an infant child, in a custody dispute. (*Kennedy, supra*, 201 Cal.App.4th at p. 1200.) The trial court granted the mother's motion to disqualify the paternal grandfather, even though neither he nor his wife (also an attorney) had ever represented the mother. (*Id*. at pp. 1201-1202.) This court affirmed: "A plethora of family entanglements, potential misuse of confidential information, a conflict posed by the near-certain prospect that counsel will have to testify, and the preservation of the integrity of the judicial system all coalesce to support the trial court's disqualification order." (*Id*. at p. 1200.) The first factor supporting the disqualification order was the potential misuse of the mother's confidential information, which the paternal grandparents "may have acquired" during the course of representing the mother's father in a divorce proceeding. (*Id*. at pp. 1205-1206.) Other factors supporting the court's ruling included "the almost inevitable prospect" that the paternal grandfather would need to testify in the custody dispute in violation of the "advocate-witness rule" (*id*. at pp. 1208-1209), as well as the "strong appearance of impropriety" caused by the "multiple and interconnected family entanglements" between the parties and proposed counsel. (*Id*. at p. 1211.)

Here, Engel seeks disqualification based on alleged misconduct that is not related to a conflict of interest or the use or disclosure of confidential information. As Engel concedes, no California case has authorized disqualification of *opposing counsel* in such circumstances. While the appearance of impropriety may support disqualification when combined with other factors, such as the potential for misuse of confidential information in *Kennedy,* California does not permit disqualification based *solely* on an appearance of impropriety. (*Derivi Const. & Architecture, Inc. v. Wong* (2004) 118 Cal.App.4th 1268, 1274; *Addam v. Superior Court* (2004) 116 Cal.App.4th 368, 372; *DHC, supra,* 95 Cal.App.4th at p. 833.) It may be that some ethical breaches unrelated to the duties of loyalty and maintaining confidence merit disqualification. (See, e.g., *Wagner v. Lehman Bros. Kuhn Loeb, Inc*. (N.D.Ill. 1986) 646 F.Supp. 643, 659 ["This Court has no doubt

10

that Gomberg must be disqualified as counsel for plaintiff for his unethical conduct in violation of DR 7-109(C) [paying witness contingent on his testimony or outcome of case] and DR 7-104(A) [communicating with party known to be represented by lawyer]"].) Here, however, we need not address which breaches, other than those of loyalty or confidence, might justify disqualification, because Engel has not shown continued representation by opposing counsel threatens him "with cognizable injury or would undermine the integrity of the judicial process." (*Kennedy, supra,* 201 Cal.App.4th at p. 1205.)

The purpose of a disqualification order must be prophylactic, not punitive. "Thus, disqualification is proper where, as a result of a prior representation or through improper means, there is a reasonable probability counsel has obtained information the court believes would likely be used advantageously against an adverse party during the course of the litigation. . . . Disqualification is inappropriate, however, simply to punish a dereliction that will likely have no substantial continuing effect on future judicial proceedings. [Citation.]" (*Gregori v. Bank of America* (1989) 207 Cal.App.3d 291, 309.) In that situation, other sanctions must suffice. (*Ibid.*) "[T]he significant question is whether there exists a genuine likelihood that the status or misconduct of the attorney in question will affect the outcome of the proceedings before the court." (*Id.* at p. 308.) As we next discuss, Engel has failed to make that necessary showing.

III

*The Alleged Misconduct Does Not Merit Disqualification*

A. *Intentional Deceit before Judicial Officers*

Engel contends defense counsel "presented false facts that they knew not to be true to every judicial officer presiding over this case." First, he contends attorneys Kozina and Gorham mislead the court in opposing the motion to compel the deposition of Hughes. Kozina declared he communicated with Hughes in preparing discovery responses. In support of this declaration, Kozina provided copies of faxes sent to

11

Hughes. Hughes denied she communicated with defense counsel about discovery. Engel points out these faxes were sent just days before Hughes was placed on administrative leave. Gorham declared that he "was informed" that Hughes "had attended closed session meetings of the JLFPD Board of Directors related to personnel evaluations." Again, Hughes denied this. By simply presenting contrary evidence, Engel has not shown these two instances demonstrate "intentional deceit," particularly where Gorham was relying on what he had been told.

Engel next contends Kozina misled the discovery referee to believe that the piecemeal discovery production was the fault of Crabtree Consulting and defendants, when defense counsel exclusively controlled discovery, as shown by Kozina's statement to Crabtree, "I'll be handling the production of documents we believe Engel is entitled to." Engel further contends defense counsel provided false discovery verifications by Olson and Crabtree, who later testified they did not know what had been produced in discovery. These contentions of deceit are a continuation of the fraud/crime allegations Engel made to the discovery referee, who found them "ill-conceived."

Although the discovery referee quoted Kozina's excuse for the late discovery, he found that defendants were not "blameless" in conducting discovery. The referee found the production of documents was "poorly done" and defendants made "a poorly conceived objection." Although phrased in terms of "defendants," it is clear this criticism was leveled at defense *counsel* (who would have conceived the objection) as well. Engel had requested both that depositions be reopened and a forensic analysis be performed of the hard drives of Olson, Hughes, and Crabtree Consulting to ensure all relevant documents had been produced. The referee permitted the deposition to re-open, but found a forensic analysis unwarranted. The referee, however, found it insufficient for defense counsel to rely on representations of their clients regarding production of requested documents.

12

The trial court adopted the referee's proposed order that defense counsel conduct their own review and declare under penalty of perjury that they had done so. Thus, the referee and the trial court were not misled into believing the discovery problems were solely the fault of defendants and Crabtree, not defense counsel. The remedy was directed at counsel because discovery was *their* responsibility; they were required to conduct a review and verify discovery compliance.

Kozina filed the required declaration under penalty of perjury. On appeal, Engel contends this declaration was "false." In support of this assertion, Engel points to a deposition conducted a month *before* Kozina's declaration was filed, at which additional JLFPD records were produced. "In light of this latent evidence, the deceit underlying Defense counsel's declaration . . . is palpable." We disagree. We fail to understand how late production *before* the declaration that states all reasonable steps have been taken to ensure complete production proves the declaration is false. Engel offers no evidence of late production of documents *after* the declaration was filed. He has not shown that the referee's requirement of a declaration under penalty of perjury is insufficient to cure the late discovery problem.

These claims of "deceit" all relate to discovery disputes in the past. The trial court has resolved these disputes and, in some cases, imposed monetary sanctions. Code of Civil Procedure section 2023.030 provides for a variety of sanctions for misuse of the discovery process. Disqualification of counsel is not an authorized sanction. "[T]he purpose of a disqualification must be prophylactic; an attorney may not be disqualified purely as a punitive or disciplinary measure. [Citations.]" (*Neal v. Health Net, Inc.* (2002) 100 Cal.App.4th 831, 844.) If defense counsel misuses the discovery process in the future, the trial court has a variety of sanctions available to address the problem. Indeed, the trial court referred to such possible sanctions in its ruling, noting that whether such sanctions were appropriate was not an issue presently before it.

13

Engel contends defense counsel demonstrated deceit by failing to correct Olson's false testimony, offered in support of a motion for summary judgment, that Dr. Watson was Engel's personal physician and not connected with workers' compensation. Engel argues defense counsel adopted this false testimony by arguing that Engel refused to take a medical examination. Engel contends, "Defense counsel was referring to the Qualified Medical Evaluation with Dr. Lopez, set solely to determine the compensability of Appellant's workers' compensation claim, not his fitness for duty." As the trial court found, the issue of the role of certain doctors and whose release was needed for Engel to return to work is connected to the factual dispute in the underlying litigation. Engel argues the trial court erroneously focused on the factual issue of whether Engel was medically cleared to return to work, while the motion to disqualify was based on counsel's deceit. What Engel fails to understand is that resolution of the factual issue bears on whether Olson's testimony (and counsel's presentation thereof in support of the summary judgment motion) could be considered deceitful, or simply a different view of the facts. Like the trial court, we decline to attempt to resolve the key factual dispute of the trial on a motion to disqualify counsel.

Further, Engel fails to show that any false testimony, or failure to correct it, is a "cognizable injury or would undermine the integrity of the judicial process." (*Kennedy, supra,* 201 Cal.App.4th at p. 1205.) Olson's motion for summary judgment was denied. Engel will have ample opportunity to refute Olson's version of the facts at trial, and to use Olson's prior testimony, if false, to impeach him. Engel's claim of deceit regarding Olson's testimony does not justify disqualification. (See *Koo v. Rubio's Restaurants, Inc.* (2003) 109 Cal.App.4th 719, 734 [abuse of discretion to disqualify counsel for mistaken declaration].)

B.  *Intimidation of Witness Hughes*

Engel contends attorney Gorham improperly intimidated Hughes at the first deposition session and his conduct has left her in fear of her safety.  He contends this intimidation "Rises to the Level of Criminal Misconduct."  He argues, "Without question, Defense counsel's misconduct has and will continue to have a prejudicial affect on the proceedings, especially with [] respect to this key witness when called to testify at trial."  Engel bases this contention on Hughes's declaration, and the fact that Gorham never did dispute the accusation that he behaved in an intemperate fashion at the first deposition.  Engel claims the evidence of witness intimidation is "undisputed."

The trial court did not mention witness intimidation in its ruling denying the motion to disqualify.  From this silence we infer that the trial court did not find witness intimidation.  (See *Continental Ins. Co. v. Superior Court* (1995) 32 Cal.App.4th 94, 108 [order includes only findings expressly made or arising by implication].)  We accept the trial court's implied findings on disputed factual issues if supported by substantial evidence.  (*SpeeDee, supra,* 20 Cal.4th at p. 1143.)  While Gorham's behavior at the deposition may not be disputed, the effect it had on Hughes was disputed.  The record contains substantial evidence to refute Hughes's claim that she feared Gorham.  She did not claim any intimidation until she filed a declaration that contradicted portions of her deposition testimony; the claim of intimidation served to explain the contradictions.  She did not raise her fear of Gorham at the second deposition session; instead, she stated there was no reason she could not give her best testimony.  Counsel representing Hughes in the embezzlement investigation did not contact Gorham about any fear her client had when around Gorham.  The embezzlement investigation gave Hughes a reason to have a bias against defendants.

Engel has failed to establish witness intimidation.

15

C.  *Tainting the Testimony of Witness Crabtree*

Engel contends defense counsel unethically tainted the testimony of Crabtree.  At his deposition, Crabtree stated he had reviewed Yeung's deposition while preparing for his own.  Engel contends allowing Crabtree to review Yeung's deposition was an improper attempt to coordinate witness testimony.  Subject to two exceptions, Evidence Code section 777 permits a court to "exclude from the courtroom any witness not at the time under examination so that such witness cannot hear the testimony of other witnesses."  Engel reasons that since examination and cross-examination of a deponent is to proceed under the provisions of the Evidence Code (Code Civ. Proc., § 2025.330, subd. (d)), allowing a deponent to read the deposition of another violates the protection of Evidence Code section 777 against coordinated testimony.

Engel has failed to establish misconduct.  He cites to no authority prohibiting a deponent from reading another's deposition in advance of testifying, nor does he cite to any authority prohibiting a deponent from discussing his testimony with another deponent.  Evidence Code section 777, by its express terms, applies only to witnesses in a courtroom.  Crabtree freely disclosed his review of Yeung's deposition at the beginning of his, thus allowing Engel to question him about that review as appropriate.  Finally, Engel offers no evidence that Crabtree actually coordinated his testimony with that of Yeung.

16

## DISPOSITION

The judgment (order) is affirmed. Defendants shall recover costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1) & (2).)

_____/s/_____
Duarte, J.

We concur:

_____/s/_____
Blease, Acting P. J.

_____/s/_____
Hoch, J.