Filed 9/28/16  Walker v. Apple CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| STACEY WALKER et al., <br><br> Plaintiffs and Appellants, <br><br> v. <br><br> APPLE, INC., <br><br> Defendant and Respondent. | D069713 <br><br><br> (Super. Ct. No. 37-2015-00012943-CU-OE-CTL |

APPEAL from an order of the Superior Court of San Diego County, Ronald L. Styn, Judge.  Affirmed.

Law Offices of Martin N. Buchanan and Martin N. Buchanan for Plaintiffs and Appellants.

Carothers Disante & Freudenberger, Timothy M. Freudenberger, Kent J. Sprinkle, Steven A. Micheli and Teresa W. Ghali for Defendant and Respondent.

Stacey Walker and Tyler Walker (together, the Walkers),[1] the plaintiffs in this putative class action against their former employer, Apple, Inc. (Apple), appeal the trial court's order disqualifying their counsel, Hogue & Belong (the Firm). The trial court found automatic disqualification was required on the basis the Firm had a conflict of interest arising from its concurrent representation of the putative class in this case and the certified class in another wage-and-hour class action pending against Apple (*Felczer v. Apple, Inc.* (Super. Ct. San Diego County No. 37-2011-00102573-CU-OE-CTL) (*Felczer*)). Specifically, based on the parties' litigation strategies and evidence Apple submitted in support of its disqualification motion, the trial court concluded that to advance the interests of its clients in this case, the Firm would need to cross-examine a client in the *Felczer* class (the Walkers' store manager) in a manner adverse to that client.

On appeal, the Walkers contend the trial court erred by concluding (1) the store manager, as an *unnamed* member of the *Felczer* class, is a Firm client; (2) the Walkers' and the store manager's interests conflict; and (3) disqualification was automatic in the class action context. On the record before us—where a class has been certified in *Felczer*, and undisputed evidence establishes the store manager's identity and her likely significant role in this case—we conclude the trial court did not err in finding the Firm represents the store manager and that a disqualifying conflict exists between her interests and the Walkers' interests. Therefore, we affirm.

---

[1]    The record does not indicate whether Stacey Walker and Tyler Walker are related. For convenience, we will refer to them collectively as "the Walkers"; we do not intend to suggest any relation between them.

FACTUAL AND PROCEDURAL BACKGROUND

*The* Felczer *Class Action*

In 2011, Brandon Felczer and others, represented by the Firm, filed the *Felczer* wage-and-hour class action against Apple in San Diego County Superior Court. The operative fourth amended complaint alleges Apple's meal and rest period policies are facially noncompliant with California law, and that Apple systematically failed to timely pay employees upon termination. The complaint also alleges that as a result of the meal and rest period violations, Apple failed to provide accurate wage statements as required by Labor Code section 226 and implementing regulations.

The *Felczer* plaintiffs sought certification of a class of current and former nonexempt Apple employees who had worked for Apple since December 16, 2007, at any of its California locations. In July 2014, the *Felczer* court granted plaintiffs' motion and certified six subclasses. The first four subclasses relate to meal and rest period violations; the fifth subclass relates to former nonexempt employees who were not provided timely payment upon termination; and the sixth subclass relates to nonexempt employees' derivative claim that they were not provided timely and accurate wage statements. The court noted the final-payment and wage-statement claims were merely "derivative" of the meal and rest period claims because "wherever meal and rest period penalties should have been paid but were not, the corresponding wage statement is inaccurate."

In January 2015, a class notice was sent to more than 20,000 identified *Felczer* class members. Nearly 20,000 opted to remain in the class.

3

*The Walkers' Class Action Complaint*

In April 2015, nine months after the *Felczer* class was certified, the Walkers, also represented by the Firm, filed this putative class action against Apple in San Diego County Superior Court. The Walkers are former nonexempt employees of Apple who worked at Apple's Carlsbad store until their employment ended in 2014. They allege Apple did not furnish them with final wage statements upon termination of their employment, in violation of Labor Code section 226 and applicable wage orders.

The complaint alleges Apple's failure to provide final wage statements is part of a uniform policy and practice applicable to all of its nonexempt California employees. Specifically, the complaint alleges that employees who receive their wage statements via Apple's online "myPage" portal never receive a final wage statement because Apple immediately terminates access to myPage upon termination of employment—before terminated employees can obtain a final wage statement. The complaint asserts Apple never provided terminated employees with final wage statements "in any other manner."

The Walkers allege that during their employment, Apple paid them by direct deposit and furnished their wage statements through myPage. Once their employment ended, however, Apple immediately terminated their access to myPage. Consequently, they never received final pay wage statements in any format.

The complaint seeks certification of a class of employees who have worked for Apple since April 17, 2011, and to whom Apple failed to provide final wage statements, in violation of Labor Code section 226 and applicable wage orders.

4

Apple denies it has a uniform policy of denying terminated employees their final wage statements. Instead, Apple asserts its retail store managers (which Apple calls "Store Leaders") are responsible for handling voluntary and involuntary terminations. Their responsibilities in the termination process include delivering final paychecks and wage statements to terminated employees. Apple claims this process establishes a "good faith dispute" defense to the Walkers' claims.

*Apple's Disqualification Motion*

Apple moved to disqualify the Firm as plaintiffs' counsel in this case. Apple contended the Firm had "irreconcilable conflicts of interest" by virtue of its concurrent representation of both the certified *Felczer* class and the putative Walker class. Apple argued that in advocating on behalf of the Walkers, the Firm will necessarily have to take a position adverse to the interests of certain of the Firm's clients in the *Felczer* class.

Apple supported its motion with pleadings and evidence from *Felczer*, and a declaration from Marnie Olson (the Olson Declaration), the human resources manager responsible for Apple's Southern California retail stores, including the Carlsbad store where the Walkers worked. Olson stated "Meg Karn was the Store Leader for the Carlsbad Apple retail store where [the Walkers] worked at the time of [their] termination in late 2014. As Store Leader, Meg Karn was . . . involved in the terminations of the Walkers and the process of getting the Walkers their final pay and paystubs."

Olson explained in her declaration that Karn had been a nonexempt Apple employee during the *Felczer* class period, before she was promoted to the exempt Store Leader position. Consequently, as shown by other evidence submitted by Apple, Karn

was a member of the certified *Felczer* class.  Olson noted "there were many other Apple employees" who, like Karn, had been nonexempt employees during the *Felczer* class period but had been subsequently promoted to exempt positions and "were responsible for terminations of non-exempt employees."

Based on this evidence, Apple argued the Firm had a conflict because it "would have to cross-examine its own client—Ms. Karn—about the alleged failure to comply with the law."  In other words, to establish the Walkers' claim that Apple had a uniform policy of not providing final wage statements, the Firm would have to cross-examine Karn to have her contradict Apple's assertion that she was ultimately responsible for providing the Walkers' final wage statements.  Alternatively, the Firm would force Karn to admit on cross-examination that she was either unaware of this responsibility, or was aware of it but failed to fulfill it—neither of which would reflect well on her managerial competence.

The Walkers opposed Apple's disqualification motion on grounds including the following:  (1) there was no actual, existing conflict, and Apple's motion was based on speculation and conjecture that such a conflict might arise in the future; (2) Apple's motion to disqualify was a tactical strategy to delay the proceedings and drive up costs; and (3) the claims asserted in *Felczer* and this action are separate and distinct.  The Walkers supported their opposition with Apple's certification briefs from two other cases, but submitted no other opposing evidence.

6

*The Disqualification Order*

On January 8, 2016, the trial court heard Apple's motion and, later that day, issued a minute order disqualifying the Firm. The court found it was undisputed that Store Leader Karn was a *Felczer* class member and was also responsible for timely providing the Walkers their final wage statements. The court rejected the Walkers' argument that "it is Apple's company-wide policies and practices that form the basis of Plaintiff's claims"; rather, the court explained, "it is Apple's employees such as Karn who implement[ed] these policies." Consequently, the court concluded "there exists the potential that [Firm] client Karn (in *Felczer*) will be called by Apple in this case to testify on issues relating to whether Karn/Apple knowingly and intentionally failed to provide timely final wage statements to [the Walkers]. This will put [the Firm] in the position of having to cross-examine Karn—[the Firm]'s client in *Felczer*. Such circumstance establishes that [the Firm] is simultaneously representing clients who have conflicting interests. Under the authorities set forth herein, disqualification is automatic."

The court explained it was "not persuaded by the [Walkers'] argument that disqualification is speculative and premature" because the court concluded the law " 'does not permit even the appearance of divided loyalties of [class] counsel.' "

In addition, although the trial court identified Karn as a specific example of a disqualifying conflict, the court did not limit potential conflicts to Karn alone. Rather, the trial court rejected the Walkers' argument that "Karn *and other members of the* Felczer *class* are not clients of [the Firm] for purposes of a conflict/disqualification analysis." (Italics added & omitted.)

7

Finally, the trial court rejected the Walkers' claim that Apple's motion constituted tactical abuse.

## DISCUSSION

The Walkers contend the trial court erred in making three predicate findings that underlie its disqualification order: (1) that Karn, as an *unnamed* member of the *Felczer* class, is a Firm client; (2) that, even assuming Karn is a Firm client, a conflict exists between her and the Walkers' interests; and (3) that any conflict requires automatic disqualification. As we will explain, on the specific record before us, we conclude these contentions are without merit.

### I. *General Disqualification Principles and Standard of Review*

"A trial court's authority to disqualify an attorney derives from the power inherent in every court '[t]o control in furtherance of justice, the conduct of its ministerial officers, and of all other persons in any manner connected with a judicial proceeding before it, in every matter pertaining thereto.' " (*People ex rel. Dept. of Corporations v. SpeeDee Oil Change Systems, Inc.* (1999) 20 Cal.4th 1135, 1145 (*SpeeDee*), quoting Code Civ. Proc., § 128, subd. (a)(5).) "[D]isqualification motions involve a conflict between the clients' right to counsel of their choice and the need to maintain ethical standards of professional responsibility." (*Ibid*.) "The paramount concern must be to preserve public trust in the scrupulous administration of justice and the integrity of the bar. The important right to counsel of one's choice must yield to ethical considerations that affect the fundamental principles of our judicial process." (*Ibid*.)

8

Rule 3-310 of the Rules of Professional Conduct provides in pertinent part: "(C) A member shall not, without the informed written consent of each client: [¶] . . . [¶] (3) Represent a client in a matter and at the same time in a separate matter accept as a client a person or entity whose interest in the first matter is adverse to the client in the first matter."

In evaluating alleged conflicts, a court first looks to whether the challenged representation is concurrent or successive. (See *Gong v. RFG Oil, Inc.* (2008) 166 Cal.App.4th 209, 214 (*Gong*).) The Firm's representation of the *Felczer* class and the Walkers is concurrent. The "primary value" at issue in concurrent "or dual representation is the attorney's duty—and the client's legitimate expectation—of *loyalty* . . . ." (*Flatt v. Superior Court* (1994) 9 Cal.4th 275, 284 (*Flatt*).) "The most egregious conflict of interest is representation of clients whose interests are directly adverse in the same litigation. [Citation.] Such patently improper dual representation suggests to the clients—and to the public at large—that the attorney is completely indifferent to the duty of loyalty and the duty to preserve confidences. However, the attorney's actual intention and motives are immaterial . . . ." (*SpeeDee, supra*, 20 Cal.4th at p. 1147.) "[I]n all but a few instances, the rule of disqualification in simultaneous representation cases is a *per se* or 'automatic' one." (*Flatt, supra*, 9 Cal.4th at p. 284.)

"[I]n a class action context, disqualification is more likely because putative class counsel are subject to a 'heightened standard' which they must meet if they are to be allowed by the Court to represent absent class members." (*Huston v. Imperial Credit Commercial Mortg. Inv. Corp.* (C.D. Cal. 2001) 179 F.Supp.2d 1157, 1167; *Moreno v.*

*AutoZone, Inc.* (N.D. Cal., Dec. 6, 2007, No. C05-04432 MJJ) 2007 WL 4287517, at *7 (*Moreno*).)  However, "[i]n the realm of class actions, the rules of disqualification cannot be applied [mechanically] so as to defeat the purpose of the class proceedings."  (*Sharp v. Next Entertainment Inc.* (2008) 163 Cal.App.4th 410, 434 (*Sharp*).)  "Rather, the circumstances of each case must be evaluated."  (*Ibid.*)

"Generally, a trial court's decision on a disqualification motion is reviewed for abuse of discretion.  [Citations.]  If the trial court resolved disputed factual issues, the reviewing court should not substitute its judgment for the trial court's express or implied findings supported by substantial evidence.  [Citations.]  When substantial evidence supports the trial court's factual findings, the appellate court reviews the conclusions based on those findings for abuse of discretion.  [Citation.]  However, the trial court's discretion is limited by the applicable legal principles.  [Citation.]  Thus, where there are no material disputed factual issues, the appellate court reviews the trial court's determination as a question of law.  [Citation.]  In any event, a disqualification motion involves concerns that justify careful review of the trial court's exercise of discretion."  (*SpeeDee, supra*, 20 Cal.4th at pp. 1143-1144.)

## II.   *The Firm's Representation of Karn*

The threshold issue is whether the Firm, which represents the certified *Felczer* class, also represents Karn by virtue of her status as an *unnamed* member of that class. Based on the facts that the *Felczer* class has been certified, and that Karn's identity and significance to this action are known to the parties, we conclude the trial court did not err by finding the Firm represents Karn for purposes of determining conflicts.  To be clear,

10

we do not reach this conclusion merely because a class has been certified in *Felczer*; rather, it is also because of the additional undisputed evidence regarding Karn's identity and likely role in this case.

Certification of a class alters the relationship between class counsel and absent class members for some purposes. For example, once a class is certified, class counsel represent absent class members for purposes of the ethical rule that prohibits communication with represented parties.[2] (See *Hernandez v. Vitamin Shoppe Industries Inc*. (2009) 174 Cal.App.4th 1441, 1459; *Parks v. Eastwood Ins. Services, Inc*. (C.D. Cal. 2002) 235 F.Supp.2d 1082, 1083.) This is the principle on which the trial court found the Firm represented Karn.

Similarly, many courts and commentators have recognized that postcertification communications between class counsel and unnamed class members are protected by the attorney-client privilege. (See *Harris v. Vector Marketing Corp.* (N.D. Cal. 2010) 716 F.Supp.2d 835, 847 [" '[o]nce a class has been certified, the rules governing communications [with class members] apply as though each class member is a client of the class counsel' "], quoting Manual of Complex Litigation (4th ed. 2004) § 21.33, p. 300; *Harlow v. Sprint Nextel Corp.* (D. Kan., Feb. 28, 2012, No. 08-2222-KHV-DJW) 2012 WL 646003, at *6; Rubenstein, 3 Newberg on Class Actions (5th ed. 2013) § 9:21

---

[2] Rule 2-100 provides: "(A) While representing a client, a member shall not communicate directly or indirectly about the subject of the representation with a party the member knows to be represented by another lawyer in the matter, unless the member has the consent of the other lawyer."

11

[it "is surely the case after class certification" that "the relationship between absent class members and class counsel is one of client to counsel"].)

The court in *Del Campo v. Mealing* (N.D. Cal., Dec. 7, 2011, No. C 01-21151 JW) 2011 WL 6176223 (*Del Campo*) extended these principles by holding that class certification is also the demarcation point for determining representation for conflict purposes.[3] (*Id.* at pp. *3-*4.) The conflict in *Del Campo* arose from class counsel's concurrent representation of the certified class in that case and the putative class in another case. (*Id.* at p. *1.) Although class counsel had obtained conflict waivers from the *named* class representatives in *Del Campo* (*id.* at p. *3), the court found the waivers untimely because a class had already been certified and, thus, the class representatives could no longer consent on behalf of absent class members (*id.* at p. *4).

The Walkers urge us not to adopt class certification as the defining event for determining representation for conflicts purposes. They contend such a rule would be impractical because the identities of absent class members will often be unknown. However, considering the circumstances of this particular case (*Sharp, supra*, 163 Cal.App.4th at p. 434), we need not adopt such a broad rule because undisputed evidence established Karn's identity and likely significant role in this case. Thus, it is the combination of class certification in *Felczer*—which transformed the Firm's relationship with class members for some purposes—*and* the undisputed evidence regarding Karn's

---

[3]    "Although not binding precedent on our court, we may consider relevant, unpublished federal district court opinions as persuasive." (*Futrell v. Payday California, Inc.* (2010) 190 Cal.App.4th 1419, 1433, fn. 6.)

12

identity and role in this case—which minimizes the concern regarding the impracticalities of dealing with unknown, unnamed class members—that persuades us that the trial court did not err in finding the Firm represents Karn for conflicts purposes.

The Walkers' reliance on a comment to the American Bar Association's Model Rules of Professional Conduct (ABA Model Rules) to support a contrary outcome is unavailing.[4] ABA Model Rule 1.7 addresses conflicts between concurrently represented clients.[5] Comment 25 to that rule provides: "When a lawyer represents or seeks to represent a class of plaintiffs or defendants in a class-action lawsuit, unnamed members of the class are ordinarily not considered to be clients of the lawyer for purposes of applying paragraph (a)(1) of this Rule. Thus, the lawyer does not typically need to get the consent of such a person before representing a client suing the person in an unrelated

---

[4] "California has not adopted the ABA Model Rules [citation], although they may serve as guidelines absent on-point California authority or a conflicting state public policy [citation]." (*City and County of San Francisco v. Cobra Solutions, Inc.* (2006) 38 Cal.4th 839, 852.)

[5] ABA Model Rule 1.7 provides:
"(a) Except as provided in paragraph (b), a lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if:

(1) the representation of one client will be directly adverse to another client; or

(2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer."

Paragraph (b) of ABA Model Rule 1.7 sets forth the conditions under which a concurrent conflict of interest may be waived.

matter. Similarly, a lawyer seeking to represent an opponent in a class action does not typically need the consent of an unnamed member of the class whom the lawyer represents in an unrelated matter." The Walkers assert "California courts look to [the ABA Model Rules] for guidance in this area." (See *Sharp, supra*, 163 Cal.App.4th 410; *Kullar v. Foot Locker Retail, Inc.* (2011) 191 Cal.App.4th 1201 (*Kullar*).)[6] A closer look at those cases, however, indicates they are distinguishable with respect to whether a class had yet been certified and whether evidence established the identities of unnamed class members.

In *Sharp, supra*, 163 Cal.App.4th 410, the defendant moved to disqualify plaintiffs' counsel on the basis they had conflicts arising from the concurrent representation of parties with conflicting interests (a class of reality-television employees and the guild that sought to organize them). (*Id.* at p. 416.) The named representatives of the putative class signed conflict waivers, but the defendant argued they were inadequate. (*Id.* at p. 431.) The appellate court disagreed, reasoning (1) "no classes have been certified" (*id.* at p. 432), and (2) it would be impractical to obtain consent from unnamed class members "as the names of the absent class members are most likely unknown" (*ibid.*).

*Kullar, supra*, 191 Cal.App.4th 1201 is similarly distinguishable. There, the defendant moved to disqualify the plaintiff's counsel based on an alleged conflict arising

---

6    The Walkers also cite this court's decision in *City of San Diego v. Haas* (2012) 207 Cal.App.4th 472. However, *Haas* is inapposite because it involves an alleged conflict arising from a third party's payment of legal fees, not the type of concurrent representation conflict at issue here. (*Id.* at pp. 501-502.)

14

from counsel's concurrent representation of (1) class members who supported settlement of an earlier-filed class action, and (2) members of a later-filed, overlapping class action who objected to settlement of the earlier-filed case. (*Id.* at pp. 1202, 1204-1205.) The trial court denied the motion, and the appellate court affirmed. (*Id.* at pp. 1204, 1208.) Among its reasons for affirming, the appellate court explained—citing *Sharp, supra*, 163 Cal.App.4th 410 and comment 25 to ABA Model Rule 1.7—"no class has yet been certified in [the later-filed class action]" (*Kullar*, at p. 1205), and the parties supporting the settlement in the earlier-filed action were unknown (*id.* at p. 1207, citing *Moreno, supra*, 2007 WL 4287517, at pp. *4-*5.)

In light of these cases, and on this record—where the *Felczer* class has been certified, where Karn is a member of that class, and where Karn's identity and likely significant role in this litigation are known to the parties—we conclude the trial court did not err in concluding the Firm represents Karn for purposes of determining conflicts.

### III. *Conflicting Interests*

The Walkers contend the trial court erred by finding their interests conflict with Karn's. They assert any potential conflict is merely hypothetical and speculative, and they challenge the sufficiency of the evidence supporting the trial court's finding. They argue—for the first time on appeal—that any conflict can be avoided by retaining independent cocounsel to cross-examine Karn (should it become necessary to do so). Finally, they maintain the trial court applied an incorrect "appearance of divided loyalties" standard. None of these contentions has merit.

15

" 'A conflict of interest exists when a lawyer's duty on behalf of one client obligates the lawyer to take action prejudicial to the interests of another client . . . .' " (*Havasu Lakeshore Investments, LLC v. Fleming* (2013) 217 Cal.App.4th 770, 778; *Flatt, supra*, 9 Cal.4th at p. 282, fn. 2.)  " 'A conflict arises when the circumstances of a *particular case* present "a substantial risk that the lawyer's *representation of the client* would be materially and adversely affected by the lawyer's own interests or by the lawyer's duties to another current client, a former client, or a third person." ' "  (*Sharp, supra*, 163 Cal.App.4th at p. 426.)  An "adverse" interest is one that is "hostile, opposed, antagonistic . . . , detrimental, [or] unfavorable" to another's interests.  (*Ames v. State Bar* (1973) 8 Cal.3d 910, 917.)  Although disqualification is required when an attorney represents clients with directly adverse interests (*Sharp*, at p. 428), disqualification is not required "when only a hypothetical conflict exists" (*Fox Searchlight Pictures, Inc. v. Paladino* (2001) 89 Cal.App.4th 294, 302).

Substantial evidence supports the trial court's finding that, under "the circumstances of [this] *particular case*" (*Sharp, supra*, 163 Cal.App.4th at p. 426), the Walkers' and Karn's interests are adverse.  The Walkers allege Apple violated California labor laws as a result of a uniform policy of terminating employees' access to the myPage portal immediately upon termination and before terminated employees are able to obtain an electronic final wage statement.  Apple, however, suggests via the Olson Declaration that any failure to timely deliver final wage statements to the Walkers was not the result of a uniform policy, but rather was the result of an error by the Store Leader—Karn.  Specifically, the Olson Declaration states the Store Leader of each retail store is

16

ultimately "responsible for handling voluntary and involuntary terminations," which includes "obtaining and delivering physical final paychecks with final wage statements ('paystubs') attached to the checks to [terminated] employees." As to the Walkers, the Olson Declaration further states "Karn was . . . involved in the terminations . . . and the process of getting the Walkers their final pay and paystubs." This specific reference to the Walkers contradicts their suggestion that Olson's description of Karn's termination-related duties excludes those employees who were paid by direct deposit and received only electronic paystubs through the myPage portal.

The trial court found these conflicting litigation strategies implicated the Walkers' burden of showing Apple's failure to provide final wage statements was "knowing and intentional," and Apple's "good faith dispute" defense. The court further found Karn's testimony will be relevant to the parties' burdens on these issues. Thus, it is not merely hypothetical or speculative that Karn will eventually testify in some capacity during this case.

Nor is it merely hypothetical or speculative that the Walkers' and Karn's interests will conflict when Karn does testify. While the parties focus on the degree to which their interests in the outcomes of the litigation conflict, the conflict is much more practical and fundamental: the Firm may jeopardize Karn's employment prospects. For instance, to support the Walkers' position that Apple's failure to provide a final wage statement was the result of a uniform policy, the Firm will likely cross-examine Karn to establish she had no duty to provide the Walkers with final paystubs. But because Apple has already staked out a contrary position in this litigation (via its disqualification motion and the

17

Olson Declaration), Karn will be in the unenviable position of being pressured *by her own counsel* to contradict her employer's class action litigation strategy. On the other hand, if Karn testifies she was either unaware she had a duty to provide the Walkers with their final wage statements, or was aware of this duty but simply failed to fulfill it, she may undermine Apple's confidence in her as a Store Leader. Under these unusual circumstances, it would be unseemly for Karn's own counsel to force this Hobson's choice on her for the potential benefit of other clients. Doing so would violate the Firm's duty of loyalty to Karn.

Under similar circumstances, the court in *Baas v. Dollar Tree Stores, Inc.* (N.D. Cal. Apr. 1, 2008, C 07-03108 JSW) 2008 WL 906496 (*Baas*) declined to certify a class on the basis plaintiffs' counsel had a conflict of interest. In that case, the plaintiffs' counsel represented two named plaintiffs (Baas and Lofquist) in a class action against their employer for altering time records and failing to compensate employees for all time worked. (*Id.* at p. *1.) In another lawsuit against the same defendant, the same firm represented the manager of the store (Hansen) in which the two named plaintiffs worked. (*Id.* at p. *2.) Lofquist's and Hansen's deposition testimony conflicted: Lofquist testified "Hansen was aware that she worked off the clock in his presence and that Hansen encouraged her to do so," while "Hansen testified that Lofquist was paid for the time she worked," that "he never asked anyone to come in and work off the clock," and that he "knew it was against [his employer's] policy to misrepresent the time employees worked or took breaks." (*Id.* at p. *3.) The court found that "[t]o reconcile the testimony of Hansen and Lofquist, Plaintiffs' counsel will either need to portray Hansen as a liar or as

18

a manager who knowingly violated his company's policies." (*Ibid*.)  The court reasoned that even though "Hansen is merely involved as a witness" and "is not placed in any jeopardy of being liable" (*ibid*.), plaintiffs' counsel was in the untenable position of having to either "cross-examine Hansen and impeach his credibility, or 'soft-pedal' their examination of Hansen to the detriment of their representation of the class members in this action" (*id.* at p. *4).  The court observed, " 'The spectacle of an attorney skewering her own client on the witness stand in the interest of defending another client demeans the integrity of the legal profession and undermines confidence in the attorney-client relationship.' "  (*Id.* at p. *2, quoting *Hernandez v. Paicius* (2003) 109 Cal.App.4th 452, 467 [finding disqualifying conflict existed where defense counsel in medical malpractice case cross-examined plaintiff's medical expert, whom defense counsel also represented in other malpractice litigation].)

As did the trial court, we find *Baas* persuasive.  Even though Karn does not have a direct stake in the outcome of this litigation—that is, she is neither a class member nor "in any jeopardy of being liable" to the Walkers (*Baas, supra*, 2008 WL 906496 at p. *3)—she has a practical interest in not being portrayed "as a liar or as a manager who knowingly violated [her] company's policies" (*ibid*.).  And she has a right to not have her counsel put her in such a position.  (See *Hernandez v. Paicius, supra*, 109 Cal.App.4th at p. 467.)

The Walkers argue that, as in *Sandoval v. Ali* (N.D. Cal. 2014) 34 F.Supp.3d 1031 (*Sandoval*), *Baas* is distinguishable on the basis the factual record here is not sufficiently developed.  In *Sandoval*, the defendant-employer argued in its motion to dismiss that

19

plaintiffs' wage-and-hour class counsel should be disqualified because (among other reasons) counsel also represented the office manager who handled payroll at one of the stores covered by the class action who had also sued the same employer in a separate action. (*Sandoval*, at p. 1045.) The court found this simultaneous representation "troubling." (*Id.* at p. 1047.) However, at the early stage of a motion to dismiss, and without any declarations or deposition testimony, the court denied without prejudice the request to disqualify plaintiff's counsel. (*Id.* at p. 1048.)

Unlike the defendant in *Sandoval*, Apple supported its disqualification motion with evidence. Further, that evidence discloses Apple's litigation strategy and reveals that the Walkers' and Apple's competing strategies jeopardize Karn's employment interests. Under the circumstances, the trial court did not err in finding the Firm had a conflict of interest by virtue of its simultaneous representation of the Walkers and Karn.

The Walkers also argue it is premature to address disqualification in that Karn may never testify because a class may never be certified or the case may settle before trial. Deferring disqualification concerns for these reasons would create an exception that would swallow the rule—the vast majority of conflicts would go unremedied simply because the case eventually settled or was resolved before trial.

The Walkers next contend that "even if Karn were to be deposed or called as a witness, [the Firm] could steer clear of any potential conflict by associating co-counsel for the limited purpose of examining her." The Walkers did not make this argument to the trial court. It " 'is fundamental that a reviewing court will ordinarily not consider claims made for the first time on appeal which could have been but were not presented to

20

the trial court.' " (*Newton v. Clemons* (2003) 110 Cal.App.4th 1, 11; *Ochoa v. Pacific Gas & Electric Co.* (1998) 61 Cal.App.4th 1480, 1488, fn. 3.)  Although we have the discretion to consider an issue of law raised for the first time on appeal (*Waller v. Truck Ins. Exchange, Inc.* (1995) 11 Cal.4th 1, 24), we decline to exercise that discretion here because the issue is not purely legal.  For example, the Olson Declaration indicates it is not only Karn whose interests conflict with the Walkers, but also the other *Felczer* class members like Karn who later assumed roles that gave them responsibility for providing final wage statements.  Apple and the trial court were denied the opportunity to develop a factual record regarding the number and identity of such other employees, as well as whether a single independent cocounsel could represent them all, or whether each would require his or her own counsel.  In light of these unresolved questions, we decline to address the issue in the first instance on appeal.[7]

Finally, the Walkers contend the trial court erred by applying an "appearance of divided loyalties" standard.  We need not address this challenge in any detail because it is essentially a reformulation of the Walkers' argument that any conflict is merely speculative.  (See *DCH Health Services Corp. v. Waite* (2002) 95 Cal.App.4th 829, 833 [rejecting " 'appearance of impropriety' " standard where defense counsel's wife was attorney who had served on board of plaintiff hospital; " ' "Speculative contentions of

---

[7]     Although we do not reach the merits of the issue, the *Del Campo* court did.  That court stated it was unaware of any California authority supporting "the proposition that the addition of non-conflicted counsel can 'cure' a conflict of interest where previous counsel continue to be involved in the case . . . ."  (*Del Campo, supra*, 2011 WL 6176223, at p. *2.)

conflict of interest cannot justify disqualification of counsel.". . .' "]; *In re Jasmine S.* (2007) 153 Cal.App.4th 835, 843, 844 [" 'appearance' of a conflict" standard inapplicable to simultaneous representation of siblings in juvenile dependency proceedings; actual conflict is required, per California Rules of Court and California Supreme Court authority].)  Based on our conclusion above that the conflict between the Walkers' and Karn's interests are sufficiently tangible, we need not address whether the trial court correctly applied an appearance of divided loyalties standard.

## IV.  *Automatic Disqualification*

Citing recent federal appellate authority (*Radcliffe v. Hernandez* (9th Cir. 2016) 818 F.3d 537 (*Radcliffe*)), the Walkers argue class actions are one of those "few instances" (*Flatt, supra*, 9 Cal.4th at p. 284) in which the rule of automatic disqualification arising from concurrent representation conflicts does not apply.[8]  We are not persuaded.

In *Radcliffe*, the Ninth Circuit affirmed the district court's order denying a motion to disqualify one group of plaintiffs' class counsel, who had "created a conflict of interest by conditioning incentive awards for the class representatives on their approval of the proposed settlement agreement." (*Radcliffe, supra*, 818 F.3d at p. 539.)  After an earlier appeal invalidated that settlement, the district court heard a motion to disqualify the conflicted group of counsel.  (*Ibid.*)  Finding the asserted conflict did "not seriously

---

[8]    Apple argues the Walkers forfeited this argument by failing to raise it with the trial court.  We will exercise our discretion to consider the issue as one of law.  (*Waller v. Truck Ins. Exchange, Inc., supra*, 11 Cal.4th at p. 24.)

threaten the policy concerns underlying the duty of loyalty" (*White v. Experian Information Solutions* (C.D. Cal. 2014) 993 F.Supp.2d 1154, 1167 (*White*)), the district court applied a balancing test instead of the automatic disqualification rule, and denied the disqualification motion (*id.* at pp. 1167-1168).

The Ninth Circuit held the district court properly applied a balancing test. (*Radcliffe, supra*, 818 F.3d at pp. 547.) The court reasoned the "policy justifications . . . for the automatic disqualification rule are not fully transferrable to class action cases," but instead "envisioned simultaneous conflicts of interest as they generally occurred in individual litigant suits rather than in class actions." (*Id.* at p. 544.) The *Radcliffe* court stated that the policy considerations underlying the automatic disqualification rule do not "fit[] the circumstances of the lawyer who represents a class of plaintiffs whose interests may in some ways be adverse to each other, but all of whose interests are adverse to the defendant. In a class action, conflicts often arise not because an attorney simultaneously represents litigation *adversaries* but because they simultaneously represent different members of the *same* class who develop divergent interests regarding how to prevail on their shared claims." (*Ibid.*)

On the record before us, *Radcliffe* is inapposite. While it might make sense to apply a balancing test to concurrent representation conflicts that arise in circumstances *unique* to class actions—an issue on which we express no opinion here—that rationale has no application here where the conflict between the Walkers' and Karn's interests is the type that can arise in individual litigant suits—it just happens to have arisen in a class action. More fundamentally, unlike an *intraclass* dispute regarding the advisability of a

23

settlement in the same case, the conflict here arises between members of different classes in different cases and *does* "seriously threaten the policy concerns underlying the duty of loyalty" (*White, supra*, 993 F.Supp.2d at p. 1167)—Karn's right to be represented by counsel whose interests are not encumbered.

The trial court did not err in concluding the automatic disqualification rule applied.

DISPOSITION

The order is affirmed.  Apple is entitled to its costs on appeal.

HALLER, J.

WE CONCUR:

NARES, Acting P. J.

O'ROURKE, J.