Filed 9/21/17

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| ANGELICA LYNN et al., | |
| Plaintiffs and Respondents, | G053563 |
| v. | (Super. Ct. No. 30-2016-00831759) |
| STEVE GEORGE et al., | O P I N I O N |
| Defendants and Appellants. | |

Appeal from an order of the Superior Court of Orange County, Frederick Paul Horn, Judge. Reversed.

Ford & Diulio, Kristopher P. Diulio; Shawn M. Olson and Kevin A. Spainhour for Defendants and Appellants.

Law Office of Marie H. Kramer, Marie H. Kramer; Nevin Law Firm and Jeffrey G. Nevin for Plaintiffs and Respondents.

\*       \*       \*

**INTRODUCTION**

Defendants Steve George and Real Estate Portfolio Management, LLC (REPM) appeal from the trial court's order granting the motion of plaintiffs Angelica Lynn and Angel Lynn Realty, Inc. (ALR) to disqualify counsel.[1] George and REPM were represented in the trial court by attorney Kevin A. Spainhour and his law firm, Spainhour Law Group (SLG), who were the subjects of the motion to disqualify. Spainhour had represented George for over 15 years and REPM for several years.

Lynn and ALR alleged in their complaint that they had formed a partnership with George and REPM for buying and selling real property. Lynn and ALR moved to disqualify Spainhour and SLG on the ground they had represented the alleged partnership and had provided Lynn legal advice relating to a proposed sale transaction. Alternatively, Lynn and ALR asserted they had a confidential nonclient relationship with Spainhour and SLG.

The trial court expressly found that neither Spainhour nor SLG had represented Lynn or ALR in their individual capacities, that Spainhour and SLG represented REPM, and that any legal advice rendered to Lynn and ALR related solely to their work as REPM's broker of record. The court declined to decide whether a partnership was formed and whether Spainhour and SLP represented any such partnership. Although the court did not find a past attorney-client relationship amongst Lynn, ALR, Spainhour, and SLG, the court found there had been a confidential nonclient relationship between Lynn and ALR, on the one hand, and Spainhour and SLG, on the other, and a "potential attorney-client relationship with the alleged partnership." Based on those findings, the court granted the motion to disqualify.

We reverse. Substantial evidence did not support the trial court's finding of a confidential nonclient relationship. Lynn and ALR had the burden of proving grounds

---

[1] An order on a motion to disqualify counsel is directly appealable. (*Derivi Construction & Architecture, Inc. v. Wong* (2004) 118 Cal.App.4th 1268, 1272.)

for disqualification, and the evidence they submitted in support of the motion to disqualify showed the information they had disclosed to Spainhour was either shared with persons other than Spainhour, or was related to her role as the broker for the transaction. The evidence did not support a finding that Spainhour had acquired confidential information from Lynn and ALR or that a confidential relationship had arisen.

The parties devote a significant portion of their appellate briefs addressing whether the evidence supported a finding of a partnership relationship. We cannot infer the trial court made an implied finding that a partnership existed because the trial court expressly declined to make such a finding. The trial court found only a "*potential* attorney-client relationship with the *alleged* partnership." (Italics added.) A potential attorney-client relationship is not enough to deprive clients of their right to counsel of their choice. There must have been either an attorney-client relationship or a confidential nonclient relationship. As to the former, the trial court found that Spainhour and SLG did not represent Lynn and ALR, and, as to the latter, substantial evidence did not support the finding of a confidential nonclient relationship.

## BACKGROUND

REPM is a real estate investment company that buys and sells real estate investment properties for a profit. George is the "Managing Member of REPM." Spainhour is an attorney who, as of March 2016, had represented George for over 15 years and REPM for several years. REPM employs, hires, or retains the services of dozens of real estate professionals, including licensed real estate brokers, in order to carry out its business. Lynn is the owner of ALR.

A central issue in this case is the relationship between REPM and ALR. The complaint alleges, and Lynn stated in her declaration in support of the motion to disqualify, that, in November 2011, ALR and REPM orally agreed to form a partnership for the purpose of purchasing and "flipping" property. REPM and George take the position that ALR was not a partner but was one of several real estate brokers retained by

3

REPM, and, since 2011, closed over 30 transactions representing REPM as a buyer and 32 transactions representing REPM as the seller. It was undisputed that ALR served as the broker of record and property manager for the properties, whether owned by the alleged partnership or REPM.

In December 2013, either the alleged partnership or REPM purchased three pieces of property on L Street in Sacramento (the L Street Properties). Sometime in early 2015, negotiations commenced for selling the L Street Properties to another real estate investment firm. Spainhour, who had represented George since about 2001, represented the seller (either the alleged partnership or REPM) in the negotiations. During the course of the negotiations, Spainhour communicated with Lynn several times by e-mail, copied her on some e-mails sent to George, and spoke with her at least once by telephone. The proposed sale did not go through.

The relationship between REPM and ALR deteriorated. In November 2015, Lynn and ALR filed a complaint against George and REPM for breach of partnership agreement, breach of fiduciary duty, fraud, constructive fraud, accounting, and dissolution of partnership. The complaint alleged, among other things, that George and REPM refused reasonable offers for the purchase and sale of the L Street Properties, collected rental income from the L Street Properties and withheld that income from the alleged partnership, tried to oust ALR from the alleged partnership, and failed to correctly compute partnership profits. The trial court granted a motion by George and REPM to transfer the case from Sacramento County to Orange County.

In March 2016, Lynn and ALR filed their motion to disqualify counsel for George and REPM, namely, Spainhour and SLG. The trial court, after hearing the motion and taking it under submission, issued a minute order granting the motion. The court found that Lynn and ALR did not establish they had had a "*personal* attorney-client relationship" with Spainhour and SLG. "However," the court found, "the evidence indicates that Mr. Spainhour and [SLG] may have taken on implicit obligations to the

4

plaintiffs as nonclients, or may have acted as attorneys to the plaintiffs in their capacity as partners in the partnership alleged." The trial court found that none of the e-mails showed that Spainhour or SLG impliedly agreed to refrain from accepting representations adverse to Lynn or ALR, and "[t]he only evidence showing any potentially personal legal advice to Ms. Lynn was related to disclosures to be made to the buyer in the transaction, which could reasonably be considered part of Mr. Spainhour's representation of the seller in its effort to efficiently close a real estate transaction."

The trial court did find "the e-mails suggest that a confidential nonclient relationship had been established between plaintiffs and Mr. Spainhour so as to pose a conflict with respect to Mr. Spainhour's and SLG's current representation of defendants." While acknowledging a legitimate question as to whether a partnership had been formed for the L Street Properties, the court noted the "[e-mails] from Ms. Lynn and Mr. George reflect their understanding that they were acting as 50% partners with respect to the property." The court concluded: "Assuming that plaintiffs are able to prove that a partnership existed between them and defendants, which is after all the factual and legal question upon which the case rests, any past representation of the partnership by Mr. Spainhour and SLG presents a major conflict going forward. If Ms. Lynn was indeed a 50% partner in the transaction, Mr. Spainhour's representation of REPM also would presumably have encompassed the partnership, since the transaction stood to benefit the alleged partnership, and since Ms. Lynn appeared to seek legal advice from Mr. Spainhour on the subject. This matter is related at least in part to his work on the L Street transaction, and there would be substantial risk that his representation of defendants here would involve use of information acquired during the court of that work."

The trial court granted the motion to disqualify based on a finding of a "confidential nonclient relationship" and a finding of a "potential attorney-client

5

relationship with the alleged partnership." George and REPM timely appealed from a formal order granting the motion to disqualify.

## DISCUSSION

### I. Standard of Review

"Generally, a trial court's decision on a disqualification motion is reviewed for abuse of discretion. [Citations.] If the trial court resolved disputed factual issues, the reviewing court should not substitute its judgment for the trial court's express or implied findings supported by substantial evidence. [Citations.] When substantial evidence supports the trial court's factual findings, the appellate court reviews the conclusions based on those findings for abuse of discretion. [Citation.] However, the trial court's discretion is limited by the applicable legal principles. [Citation.] Thus, where there are no material disputed factual issues, the appellate court reviews the trial court's determination as a question of law. [Citation.] In any event, a disqualification motion involves concerns that justify careful review of the trial court's exercise of discretion." (*People ex rel. Dept. of Corporations v. SpeeDee Oil Change Systems, Inc.* (1999) 20 Cal.4th 1135, 1143-1144 (*SpeeDee Oil*).)

### II. The Trial Court Erred by Granting the Motion to Disqualify

The court granted the motion to disqualify on two grounds: (1) "the confidential nonclient relationship" between Spainhour and SLG, on the one hand, and Lynn and ALR, on the other, and (2) "the potential attorney-client relationship with the alleged partnership." Each ground is discussed in turn below. Neither ground supports disqualification of counsel.

The parties also raise the issue of standing. To bring a motion to disqualify counsel, the moving party must have standing; that is, the invasion of a legally cognizable interest. (*Great Lakes Construction, Inc. v. Burman* (2010) 186 Cal.App.4th 1347, 1357.) Standing may arise from an attorney-client relationship between the moving party and

6

targeted counsel or from a duty of confidentiality owed by the attorney to the moving party despite the absence of an attorney-client relationship. (*Id.* at pp. 1356-1357; see *DCH Health Services Corp. v. Waite* (2002) 95 Cal.App.4th 829, 832.) Thus, resolution of merits of the appeal also resolves the matter of Lynn and ALR's standing to bring the motion to disqualify.

A.  *Confidential Nonclient Relationship*

"A trial court's authority to disqualify an attorney derives from the power inherent in every court '[t]o control in furtherance of justice, the conduct of its ministerial officers, and of all other persons in any manner connected with a judicial proceeding before it, in every matter pertaining thereto.' [Citations.] Ultimately, disqualification motions involve a conflict between the clients' right to counsel of their choice and the need to maintain ethical standards of professional responsibility. [Citation.] The paramount concern must be to preserve public trust in the scrupulous administration of justice and the integrity of the bar. The important right to counsel of one's choice must yield to ethical considerations that affect the fundamental principles of our judicial process." (*SpeeDee Oil, supra,* 20 Cal.4th at p. 1145.)

"In evaluating alleged conflicts, a court first looks to whether the challenged representation is concurrent or successive." (*Walker v. Apple, Inc.* (2016) 4 Cal.App.5th 1098, 1106.) Lynn and ALR do not assert a conflict arising out of a concurrent representation; their motion to disqualify and the trial court's ruling were based on a theory of successive representation.

Conflicts arising out of an attorney's successive representation of a former client and current client are governed by the substantially related standard. (*Acacia Patent Acquisition, LLC v. Superior Court* (2015) 234 Cal.App.4th 1091, 1097 (*Acacia Patent*).) "Where an attorney successively represents clients with adverse interests, and where the subjects of the two representations are substantially related, the need to protect the first client's confidential information requires that the attorney be disqualified from

7

the second representation. [Citation.] For the same reason, a presumption that an attorney has access to privileged and confidential matters relevant to a subsequent representation extends the attorney's disqualification vicariously to the attorney's entire firm." (*SpeeDee Oil, supra,* 20 Cal.4th at p. 1146.)

The issue of successive representation of a former and a current client is not relevant, however, unless there is a former attorney-client relationship. In other words, before addressing whether the representation was successive, we must determine whether there was ever an attorney-client relationship between Spainhour and Lynn or ALR.

An attorney-client relationship reaches the point at which the attorney can be subject to a disqualification motion when a prospective client engages in preliminary consultations with the attorney with a view to retaining that attorney, even if retention does not result. (*SpeeDee Oil, supra,* 20 Cal.4th at pp. 1147-1148.) "The primary concern is whether and to what extent the attorney acquired confidential information." (*Id.* at p. 1148.)

In addition, an attorney may be subject to disqualification when the attorney owes a duty to a nonclient to preserve confidential information—i.e., a confidential nonclient relationship. In *Acacia Patent*, *supra*, 234 Cal.App.4th at pages 1098-1099, the court quoted with approval this passage from section 121 of the Restatement Third of Law Governing Lawyers: "'A conflict of interest is involved if there is a substantial risk that the lawyer's representation of the client would be materially and adversely affected by the . . . *lawyer's duties* to another current client, a former client, or *a third person.*'" In *Acacia Patent*, *supra*, at page 1099, the court also quoted with approval this passage from section 121, comment d, page 253: "'A conflict of interest can . . . arise because of specific obligations, such as the obligation to hold information confidential, that the lawyer has assumed to a nonclient.'" Based on section 121, comment d to section 121, and several analogous cases, the court in *Acacia Patent* concluded: "In sum, disqualifying conflicts with nonclients can arise as a result of an

8

attorney-client relationship.  If an attorney is deemed to have a duty of confidentiality to a nonclient arising out of past representation, courts apply the substantial relationship test from successive representation doctrine to determine whether to disqualify counsel in a case against the nonclient." (*Acacia Patent, supra,* 234 Cal.App.4th at p. 1102.)

The question before us is whether there is substantial evidence to support the trial court's finding of a confidential, nonclient relationship between ALR and Lynn, on the one hand, and Spainhour and SLG, on the other.  Put another way, is there substantial evidence that Spainhour obtained confidential information from Lynn or that Spainhour and Lynn had formed a confidential relationship?

The party seeking disqualification has the burden to establish the attorney-client relationship.  (*Koo v. Rubio's Restaurants, Inc*. (2003) 109 Cal.App.4th 719, 729.)  In support of the motion to disqualify, Lynn submitted her declaration, in which she identified a series of e-mail communications and at least one telephone conversation she had with Spainhour concerning the L Street Properties.  Because the trial court did not find that Lynn or ALR had formed a partnership with REPM, we treat these communications as having been made by Lynn in her capacity as broker for REPM. The communications (all from the year 2015) are the following:

1.  On April 1, Lynn sent an e-mail to George communicating some concerns she had with the proposed deal to sell the L Street Properties.  George forwarded the e-mail to Spainhour.  This communication is not confidential because Lynn sent the e-mail to George.

2.  On April 2, Spainhour sent Lynn an e-mail addressing her concerns regarding due diligence and hazardous waste material.  He suggested modifying the contract.  This is not confidential information as to Lynn because it concerned the sales contract in general and not confidential information.

3.  On April 2, Lynn sent an e-mail to Spainhour, with a copy to George, asking about disclosures to the buyer.  In the e-mail, Lynn states, "[a]lso as a 50% equity

9

partner with [George] do I need to disclose my equity position at this point to the buyer? I would like to do a 1031 exchange out of this property to avoid my tax liability. Is it possible to be added to a K1 at this point? What do you recommend to assure I am in compliance as the Broker and the BRE." In response, at 3:57 p.m. on April 2, George sent an e-mail stating: "Keep in mind that you are a 50% 'sweat equity partner' and haven't contributed any basis in the property so I am not sure if you can 1031." This communication is not confidential because Lynn sent a copy of the e-mail to George.

4. At 4:14 p.m. on April 2, Spainhour responded with an e-mail to Lynn, with a copy to George, recommending a simple disclosure be made to the buyer stating that the broker (Lynn) has a beneficial financial interest in portions of the net sale proceeds.

5. At 4:38 p.m. on April 2, Spainhour sent another e-mail to Lynn notifying her of an e-mail communication with the buyer's attorney.

6. At 2:24 p.m. on April 3, Lynn sent an e-mail to Spainhour asking if she should contact the buyer's attorney about changes to the contract. Eleven minutes later, Spainhour responding by e-mail telling her the buyer's attorney had agreed to the proposed changes. During the course of the afternoon and evening of April 3, e-mails were exchanged among Lynn, George, and Spainhour concerning the purchase/sale agreement. Spainhour copied Lynn and George on e-mails he sent to the buyer's attorney, including an e-mail with a redline version of the contract.

7. On April 6, Spainhour forwarded to Lynn and George several e-mails he had sent to the buyer's attorney. Spainhour told Lynn and George he had not received a response.

8. Sometime between April 2 and April 13, Lynn called the buyer's broker. Lynn stated in her declaration: "During that conversation I followed Mr. Spainhour's legal advice, believing that Mr. Spainhour was my attorney and had my best interests at

10

heart, and informed [the broker] of my partnership with Steve George in the L Street Properties."

9. On April 13, Spainhour sent an e-mail to Lynn and George stating it appeared the buyer was taking time to set up potential litigation and suggesting they look for another buyer.

10. Lynn stated in her declaration that on or about April 14, she had called George and told him she was willing to personally fill out the seller disclosure forms in her name or the name of ALR. She stated, "Mr. George suggested that I call our mutual attorney, Kevin Spainhour, and discuss the matter with him."

11. Lynn called Spainhour on or about April 14. She stated in her declaration: "During that conversation Mr. Spainhour relayed several concerns he had with the proposed deal, including issues related to properly disclosing an easement on one of the L Street properties, issues concerning proper measurement and disclosure of the properties' square footage, and concerns about not knowing how much liability we might be exposed to by not knowing the full impact of the easement. Mr. Spainhour and I also discussed my partnership with Mr. George, and Mr. Spainhour reiterated that I should disclose my interest in writing to the [buyer]. Mr. Spainhour and I also discussed my willingness to personally fill-out the seller disclosures in my name, as I was the person most familiar with the properties. Mr. Spainhour advised me of the risks, and after considering his legal advice, I decided to move forward with filling out the disclosures in my name in an effort to keep the . . . deal alive."

12. At 1:17 p.m. on April 14, Lynn sent Spainhour an e-mail thanking him and informing him she intended to sign the representation and warranties as they had discussed "as I am already taking on legal liability as the broker of record."

13. At 1:54 p.m. on April 14, Lynn sent an e-mail to Spainhour and two other persons stating she had signed the representations and warranties clause.

11

14.  At 9:56 a.m. on April 17, Lynn received an e-mail from Spainhour informing her that he wanted to point out some issues concerning the preliminary title report and tenant estoppels and "would like to do it internally in order to keep all of our communications attorney client privileged."  Later that day, Spainhour sent Lynn an e-mail regarding a wild deed appearing on the preliminary title report.  Spainhour asked Lynn not to forward the e-mail to anybody "outside of the company."

The trial court found the majority of these communications "related to the particulars of the L Street transaction and contract, for which Ms. Lynn's role was a broker for REPM" and "[t]he only evidence showing any potentially personal legal advice to Ms. Lynn was related to disclosures to be made to the buyer in the transaction, which could reasonably be considered part of Mr. Spainhour's representation of the seller in its effort to efficiently close a real estate transaction."

For the same reasons, we conclude that none of the communications disclosed any information to Spainhour that was confidential to Lynn.  The information disclosed by Lynn either was shared with persons other than Spainhour, and therefore was not confidential, or was related to her role as the broker for the transaction.  There is nothing in the evidence of the communications to suggest that Spainhour may have acquired confidential information from Lynn.  In her telephone call with Spainhour, Lynn spoke about her partnership relationship with George, but only for the purpose of determining the nature and extent of necessary disclosures to the buyer, a matter related to her role as the broker.

A confidential relationship between Lynn and Spainhour could not have been formed because, as the trial court found, the only advice given to Lynn related to her obligations as broker for the seller of the L Street Properties.  No confidences were exchanged that could have given rise to a confidential relationship.  Substantial evidence did not support the trial court's finding of a confidential nonclient relationship between Lynn and ALR, on the one hand, and Spainhour and SLG, on the other.

12

B. *Potential Attorney-Client Relationship with Alleged Partnership*

The trial court also granted the motion to disqualify based on "the *potential* attorney-client relationship with the *alleged* partnership." (Italics added.) A potential attorney-client relationship with an alleged partnership is not enough, however, to justify attorney disqualification. "'Before an attorney may be disqualified from representing a party in litigation because his representation of that party is adverse to the interest of a current or former client, it must first be established that the party seeking the attorney's disqualification was or is "represented" by the attorney in a manner giving rise to an attorney-client relationship.'" (*Koo v. Rubio's Restaurants, Inc., supra*, 109 Cal.App.4th at p. 729.) A mere potential attorney-client relationship with an alleged partnership is not enough to overcome "[t]he important right" of George and REPM to their long-standing counsel of choice. (*SpeeDee Oil, supra,* 20 Cal.4th at p. 1145.)

It is significant the trial court declined to make a finding that there was in fact a partnership. The court recited evidence that would support a finding of a partnership but stopped short of making such a finding, which the court described as "the factual and legal question upon which the case rests." In the absence of an express finding, we usually would infer that the trial court made implied findings to support its decision, and then test the implied findings for substantial evidence. (See *SpeeDee Oil*, *supra*, 20 Cal.4th at pp. 1143-1144; *Responsible Citizens v. Superior Court* (1993) 16 Cal.App.4th 1717, 1734.) We decline to infer the trial court in this case made an implied finding of a partnership because that would be inconsistent with the court's express decision not to make such a finding.

"[A]n attorney representing a partnership does not necessarily have an attorney-client relationship with an individual partner for purposes of applying the conflict of interest rules. Whether such a relationship exists turns on finding an agreement, express or implied, that the attorney also represents the partners." (*Responsible Citizens v. Superior Court*, *supra*, 16 Cal.App.4th at p. 1721.) Thus, to

uphold the order granting the motion to disqualify, we would have to infer an implied finding which the trial court declined to make, determine whether substantial evidence supported that implied finding, and then on top of that infer the trial court made an implied finding that Spainhour and SLP represented the partners of the partnership. All of these inferences would be contrary to the trial court's express finding that the only advice given by Spainhour and SLG to Lynn and ALR was in their capacities as brokers for the transaction.

## DISPOSITION

The order granting the motion to disqualify counsel is reversed. Appellants shall recover costs on appeal.


FYBEL, J.

WE CONCUR:


O'LEARY, P. J.


BEDSWORTH, J.

14